715 So.2d 740 (1998)
Ginger KUHL, Plaintiff-Appellant,
v.
Richard S. KUHL, Jr., Defendant-Appellee.
No. 97-1725.
Court of Appeal of Louisiana, Third Circuit.
July 8, 1998.
Mitchel Mark Evans, II, DeRidder, for Ginger Kuhl.
Elvin Clemence Fontenot, Jr., Leesville, for Richard S. Kuhl, Jr.
Before WOODARD, AMY and GREMILLION, JJ.
GREMILLION, Judge.
The plaintiff, Ginger Kuhl, appeals the trial court's judgment awarding joint custody of the minor child, Amber Kuhl, to both parties, and naming the defendant, Richard Kuhl, as the primary custodial parent. For the following reasons, we affirm.

FACTS
Ginger and Richard were divorced on February 12, 1996. In the judgment of divorce, which was consented to by both parties, they were awarded the joint care, custody, and control of Amber. Ginger was named the primary custodial parent and Richard was granted reasonable visitation rights.
On April 9, 1997, Richard filed a motion to modify the custody arrangement, alleging that Ginger had constantly interfered with his visitation rights and engaged in actions that inflicted emotional and mental abuse on Amber. Ginger filed an answer and reconventional demand seeking a modification in the custody arrangement. She alleged that she had reason to believe that Richard had sexually abused Amber based on reports from Amber's treating physician, Dr. Thomas Griffin, III, and treating child psychologist, Dr. Patricia Post.
After a hearing on this rule on June 17-18, 1997, the trial court rendered judgment in favor of Richard maintaining the joint custody order, but naming Richard as the primary custodial parent of Amber. From this judgment, Ginger appeals and lodges two assignments of error.

ASSIGNMENTS OF ERROR
Ginger alleges the following:

*741 1. The trial court committed manifest error in crediting the unsubstantiated testimony of appellee's expert witnesses.
2. The trial court committed manifest error in disregarding the uncontroverted testimony of appellant's two expert witnesses.

DISCUSSION
Because both assignments of error relate to the credibility determination made by the trial court, we will address them together. A trial court's determination regarding child custody is to be afforded great deference on appeal and will not be disturbed absent a clear abuse of discretion. Hawthorne v. Hawthorne, 96-89 (La.App. 3 Cir. 5/22/96); 676 So.2d 619, writ denied, 96-1650 (La.10/25/96); 681 So.2d 365.
In Beard v. Beard, 599 So.2d 486, 488 (La.App. 3 Cir.1992), we stated the following concerning the burden of proof required for a change in custody:
The best interest of the child is the sole criterion to be met in awarding or modifying custody under La.C.C. art. 146(E). Simmons v. Simmons, 554 So.2d 238 (La. App. 3rd Cir.1989). In custody modification cases, when a party attempts to modify a "considered decree", he bears the heavy burden of proving that the continuation of present custody is so deleterious to the child as to justify a modification of the custody decree, or of proving by clear and convincing evidence that the harm likely to be caused by a change of environment is substantially outweighed by its advantages to the child. Bergeron v. Bergeron, 492 So.2d 1193 (La.1986).
When no evidence is adduced at the district court level prior to the entry of the joint custody order which is sought to be modified, that joint custody decree is not a "considered decree" within the meaning of Bergeron, supra. In this situation, the heavy burden of proof is not applicable, but the moving party must still prove a material change in circumstances since the entry of the original decree and that the modification proposed is in the best interest of the child. McGee v. McGee, 552 So.2d 576 (La.App. 2d Cir.1989). Every child custody case must be decided based only on its own particular facts and circumstances. Lindner v. Lindner, 569 So.2d 173 (La.App. 1st Cir.1990). On appellate review, the determination of the trial court in establishing or modifying custody is entitled to great weight and will not be disturbed absent a clear showing of an abuse of discretion. Thompson v. Thompson, 532 So.2d 101 (La.1988); Bergeron, supra.

In this case, the trial court decided that the harm likely to be caused by a change in custody was substantially outweighed by the advantages. The trial court based this finding on its determination that the expert testimony presented by Richard was more credible than that presented by Ginger. In W.M.E. v. E.J.E., 619 So.2d 707, 710-11, (La.App. 3 Cir.1993), the court stated the following concerning the use of expert witnesses in child custody cases:
Faced with ... the growing use of psychological and psychiatric testimony in child custody and visitation cases, we find it necessary to again clarify the role of such expert witnesses. Expert witnesses are intended to "assist the trier of fact" in understanding the evidence or in the determination of a fact in issue. Louisiana Code of Evidence article 702. Undeniably in certain cases, expert assistance may prove invaluable in the court's determination, particularly regarding issues touching on the psychological and emotional welfare of the children.
However, the ultimate "best interest of the child" decision squarely remains in the exclusive province of the court. This decision necessarily focuses on all of the evidence and testimony presented. The trial court is not bound to follow the recommendations of an expert witness.
In the case sub judice, the trial court was faced with two distinct views of the evidence. Richard presented the testimony of Dr. John C. Simoneaux, accepted by the trial court as an expert in the field of psychology, and that of Mr. Tom James, a child protection investigator with the Office of *742 Community Services. Dr. Simoneaux performed psychological evaluations on Ginger, Richard, and Amber. These evaluations consisted of the Minnesota Multiphasic Personality Inventory (MMPI) and interviews. Based on these evaluations, he opined that Ginger's behavior in making these allegations was rooted more in vindictiveness towards Richard than in her desire to protect Amber. He stated that her psychological make-up indicated that she was quite capable of making such allegations in order to gratify her short term goal of getting Richard out of his daughter's life despite the long-term harmful effects it would have on Amber. Furthermore, his evaluation of Richard led him to the opinion that he was unlikely to engage in such conduct.
Mr. James testified that the investigation done by the OCS led to a determination that the complaint against Richard for child abuse was invalid. As a result of the OCS's determination that these were not valid reports, it decided to validate a complaint against Ginger for emotional maltreatment. This determination was based on the same evidence used to invalidate the complaint against Richard. It was the OCS's opinion that by Ginger constantly telling Amber to tell people that Richard was sexually abusing her, she was emotionally maltreating Amber.
Ginger's witnesses, Drs. Post and Griffin, testified that they believed Amber was being abused by Richard. Dr. Post based her opinion on in-office interviews with Amber conducted over the course of several months. She also testified, however, that the tests administered by Dr. Simoneaux are accepted tools in making a psychological evaluation.
The trial court was of the opinion that Dr. Griffin, the treating pediatrician who saw Amber several times due to reports of sexual abuse filed by Ginger, based his findings in large part upon the history given him by Ginger and Amber.[1] We note that the four previous complaints filed by Dr. Griffin based on Ginger's complaints were invalidated by the OCS. However, the OCS validated emotional maltreatment on Ginger's part based on her filing of the numerous complaints, their belief that Ginger was coaching Amber to accuse her father of sexual abuse, and exposing her to procedures associated with each investigation. The OCS found instead that Ginger was motivated by her anger with Richard and her desire to take him out of Amber's life. These opinions were also shared by Dr. Simoneaux.
The evidence also shows that the last complaint filed by Dr. Griffin has not been completely investigated by the OCS. That complaint was filed approximately one month after Richard filed his motion to change custody and one month before the trial of this matter. Dr. Griffin found that "there was some separation of the vulva tissues posteriorly" and, based on the history provided by Ginger and Amber, filed the complaint. The complaint was filed immediately after Richard exercised an overnight visit with Amber. During that visit, Richard invited Mr. James (Mr. James requested the visit out of the presence of Ginger) to his home to interview Amber. During the visit, Mr. James noticed that Amber, while playing near a tree, fell on the stump of the tree striking her "bottom." Mr. James testified that he still feels the complaint lacks merit even in the face of the opinion held by Dr. Griffin.
The trial court did not disregard the testimony of Drs. Post and Griffin as suggested by Ginger. Instead, it is quite obvious that the trial court considered their testimony and then chose to give more credit to the evidence presented by Richard. In its written reasons, the trial court stated its ultimate finding as follows:
This court finds that the mother has not proven any sexual abuse of the child by the father. The repeated and continuous actions of the mother in taking the child to the doctors and reporting sexual abuse to OCS which was invalidated, was in and of itself harmful to the child. She was doing this, not out of concern for the child, but in an effort to solidify her position to seek a change of the prior judgment. In doing so *743 she has harmed the child emotionally and deprived her of contact with her father.
Our review of the record reveals two versions of the story each supported by the testimony of expert witnesses. The trial court's decision to credit Richard's version and name him as the primary custodial parent is reasonable and entitled to great weight on appellate review. Therefore, we will not disturb it. Accordingly, we find that Ginger's assignments of error lack merit.

CONCLUSION
The judgment of the trial court is affirmed. All costs of this appeal are assessed to Ginger Kuhl.
AFFIRMED.
WOODARD, J., dissents and assigns reasons.
WOODARD, Judge, dissenting.
The unrefuted physical evidence in this case, which shows that, more probably than not, this now five year old little girl has been sexually abused by her father since she was three, implores a reversal. Ignoring unrefuted physical evidence constitutes manifest error. See generally, Knight v. La. Patient's Compensation Fund, 93-1619 (La.App. 3 Cir. 6/1/94); 638 So.2d 678 (Trial court's factual finding manifestly erroneous in the face of uncontradicted expert medical evidence that medical treatment was available in Louisiana as opposed to Pennsylvania.); Orlando v. Gen. Elec. Credit Corp., 430 So.2d 750 (La. App. 5 Cir.1983) (Trial court clearly wrong in failing to find a work-related injury in view of uncontroverted expert medical testimony.) Despite this law, the trial court did chose to ignore the uncontradicted expert medical evidence, and this panel is supporting that decision by characterizing this case as one in which the trial court was simply presented with two conflicting views of the evidence from which to make a credibility call. The panel would be correct if there were no physical evidence or if the physical evidence were refuted, but neither is true in the case sub judice. When one strips away the subjective testimonies of all of the witnesses on both sides of this issue, one is still left with uncontroverted physical evidence, demonstrating sexual abuse, which the law requires courts to accept as true. La. Power & Light Co. v. Roberts, 408 So.2d 49 (La.App. 3 Cir. 1981), writ denied, 412 So.2d 1111 (La.1982).
Specifically, there was but one pediatrician who testified in this casebut one expert who physically examined this child, and he did so, either at the request of OCS or right after each time she returned from a visit with her father, complaining that her father had hurt her "tutu" and her bottomthat her father had put his finger in her "pee pee." That expert was Dr. Griffin, the child's pediatrician who has treated her over her lifetime. No one from OCS physically examined her. In fact, no one from OCS was even able to address the last and most serious bit of physical evidence, demonstrating sexual abuse, because OCS had not completed its investigation of that incident which Dr. Griffin reported after his physical examination of this child who, again, had just returned from a visit with her father, complaining that Daddy had hurt her "bottom." Mr. Kuhl's expert, Dr. Simoneaux, a psychologist, who did not physically examine this child, merely interviewed her and her parents for one hour, one time. This expert also administered the MMPI to Mr. and Ms. Kuhl. As we know, this personality test is completely dependent on interpretation and subjectivity. The most glowing interpretations of this test still cannot obliterate physical evidence found on the child.
Both the trial court and the majority of this panel are convinced that the child's complaints are "caused" by the mother's vindictive coaching. One can believe this only if one ignores the physical evidence because there is no amount of talking or coaching that can "cause" redness and posteriorly separated vulva tissue to appear on a child's vulva area, as both did on this child's.
Neither Mr. Kuhl nor any of his witnessesOCS or his expertexplained away this physical evidence, especially the most alarmingthe separated vulva tissuewhich OCS had not yet investigated. In an effort to dispense with this troubling evidence, the panel notes that Mr. James, representing OCS, made a comment that he recalled seeing *744 the child fall and hit her bottom on a tree stump when he was at the father's residence. However, Mr. James not only did not examine this child's buttock afterwards, but he is not qualified in the field of medicine to evaluate or offer an opinion regarding physical findings. He submits his "off-the-cuff" observation merely as speculation and, obviously, in hopes that it will support his position. This observation is not competent evidence to refute Dr. Griffin's physical findings of sexual abuse. In fact, Dr. Griffin did physically examine this child after she returned from that visit to which Mr. James insinuates and, Dr. Griffin concluded that the redness and posteriorly separated vulva tissue he found were, nevertheless, the result of sexual abuse. On direct examination, Dr. Griffin testified that even if the child had fallen on a stump and hurt her bottom, this fact did not change his opinion, as blunt trauma "is usually in the area anteriorly up by the clitoris and usually does not involve this particular area."
No doubt Dr. Griffin, an experienced pediatrician, is aware, as we all are, that children fall and hurt themselves all the time. He, obviously, took that possibility into consideration when performing his examination, as he took into consideration the possibility of self manipulation being the cause of these manifestations. Given all of these possibilities, Dr. Griffin concluded, not once but three times, that this child had been sexually abused, and he believed it so strongly that he reported it to the authorities.
The trial court's decision, that child abuse had not been proven by a preponderance of the evidence, is based on its misunderstanding of Dr. Griffin's testimony. In its Reasons for Judgment, the court explained that, "Dr. Griffin, a pediatrician saw the child several times due to reports through OCS and the mother. His findings were consistent with sexual abuse. He further testified, though, that this was based upon the history related by the mother, child and department, rather than the actual physical findings." (Emphasis added.) The record demonstrates that Dr. Griffin never stated that and that it is an incorrect paraphrase of his testimony. While he certainly considered the history given to him, it was not the overriding consideration:
Q. Qualitatively speaking, would you rate this as a more substantial clinical finding [the separation of the vulva tissues] than the mere presence of, you know, redness of the vagina?
A. Yes, I would.
Q. And, why?
A. Because there is not only the redness which had been there before, but, there is now redness and some separation of the vulva tissues. The separation of these tissues are what's described in the medical literature and in my experience as being often the area that's involved with sexual abuse of children. And, so, it's one of the findings that's more of a worry, more of a flag towards sexual abuse than just redness alone.
(Emphasis added.) However, even if the trial court were correct that Dr. Griffin had based his conclusion of sexual abuse on the history related to him by the mother, child, and department rather than the actual physical findings, we are still left with explaining physical findings to which the medical literature alerts doctors as being signs of sexual abuse.
A smoke screen was offered by Mr. Kuhl's attorney who tried to mislead the court by asking questions which suggest that because this child's hymen was intact, there was no sexual abuse. This might be valid if we were dealing with a rape case where penetration is required, but fondling, which does not require penetration, is still sexual abuse, and the burden of proof is not "beyond a reasonable doubt."
The record reveals that this is not a case where there are simply two conflicting views of the evidence from which to chose. There was no conflicting physical evidence. There was no legitimate alternative explanation offered for this physical evidence. There was no evidence offered that someone, other than Mr. Kuhl, could have been responsible for these physical findings. There was no indication that Dr. Griffin, indeed, did not find this physical evidence but, instead, lied about it. This is the glaring manifest *745 error in the trial court's and this court's opinion.
The burden of proving sexual abuse in this case is "more probably than not." That burden has been surpassed. This decision should be reversed.
NOTES
[1] We note that Dr. Griffin also based his findings on physical evidence he found during his examination, i.e. redness around the vagina, which he explained was not only consistent with sexual abuse but also could be consistent with other complaints.