763 So.2d 759 (2000)
Tracy Craig FRANKLIN
v.
Deanna Renee M. FRANKLIN.
No. 99-1738.
Court of Appeal of Louisiana, Third Circuit.
May 24, 2000.
*760 Walter E. Dorroh, Jr., Jena, Louisiana, Counsel for Plaintiff-Appellee.
Mark L. Talley, Jena, Louisiana, Counsel for Defendant-Appellant.
(Court composed of Judge HENRY L. YELVERTON, Judge BILLIE COLOMBARO WOODARD, Judge GLENN B. GREMILLION).
GREMILLION, Judge.
In this case, Deanna Renee M. Franklin Hoffman (Deanna) appeals the trial court's determination granting her ex-husband, Tracy Craig Franklin (Craig), physical custody of their only son Tyler Craig Franklin (Tyler).

FACTS AND PROCEDURE
Deanna and Craig married on September 7, 1991, separated initially on February 23, 1996, reconciled sometime during January or February of 1997, and separated in fact for the final time on or about March 1, 1997. This suit was initiated as a La.Civ.Code art. 102 divorce action on March 12, 1997. Even though the divorce was granted, no custodial disposition was made as to Tyler. After the separation, Tyler resided with Deanna at her residence in Caldwell Parish some forty-five miles from Craig's home in LaSalle Parish. Tyler lived with his mother, but he spent approximately an equal amount of time with Craig. Craig was able to get Tyler any time he was able, and when his work afforded it, he spent as much as a week with Tyler.
On May 10, 1997, Deanna began dating Paul Hoffman. In the spring of 1998, Paul began the process of selecting a location for a new residence in the Atlanta, Georgia area. One of the factors that he considered in selecting a location was the school facilities in the area of his proposed residence. On June 6, 1998, Craig married his current wife Kimberly and later adopted her four-year-old daughter Reagan. On July 10, 1998, Paul proposed marriage to Deanna. Also on that same day, at the *761 urging of Deanna, she and Craig voluntarily entered into a Joint Custody Plan. The plan named Deanna as the domiciliary custodial parent and provided that Craig would be allowed visitation on alternating weekends, portions of school holidays, and one-half of the school summer vacation period. However, it appears that, prior to the signing of the agreement, the parties had an informal agreement that Craig would be afforded visitation whenever his work schedule allowed. Following the signing of the plan, however, Deanna restricted access to Tyler to only that which was delineated in the plan.
On July 20, 1998, just ten days after the signing of the custodial agreement, Deanna's attorney wrote to Craig's attorney advising of a proposed relocation by Deanna to Acworth, Georgia and her intentions to remove Tyler from the State of Louisiana. The Joint Custody Plan itself contained a provision concerning a relocation of a parent and read as follows:
VIII. CHANGE OF RESIDENCE. Either party may change residence at any time. However, if such change requires modification of this plan, the party desiring to change residence shall communicate with the other for the purpose of agreeing to a modification. The communication shall be in writing. Any modification shall be presented to the Court by a joint motion of the parties. If no agreement on modification is reached, the party changing residence shall request a modification from the court.
After notification of Deanna's intentions to relocate, Craig filed a rule to revise the Joint Custody Plan, and a new intermittent agreement affording visitation of alternating two-week durations to each party was reached in mid-October of 1998. The agreement was supposed to have been reduced to writing in the form of a consent order, but never went beyond a letter from Craig's attorney to Deanna's attorney. In his pleading, Craig alleged that Deanna was aware of her plans to move when she proposed the Joint Custody Plan and, as such, he was deceived into consenting to the plan. Craig sought to be awarded sole custody and, in the alternative, to be declared the domiciliary parent of Tyler. Craig also sought child support.
In August of 1998, Deanna's mother, with whom Deanna had been residing in Caldwell Parish, remarried and moved to Georgia. In contemplation of litigation, the parties agreed that Deanna would not leave Louisiana with Tyler for the purpose of establishing a residence elsewhere until completion of the litigation. Approximately six weeks later, Craig filed a rule for contempt alleging that Deanna had moved herself and Tyler to the State of Georgia. At the conclusion of the hearing, the trial court found that Deanna had established a new residence in Acworth, Georgia. The trial court further held that Deanna intended to maintain her residence in Caldwell Parish only so long as she needed it to appear that she had not relocated.
On August 10, 1998, Deanna married Paul and went on a long honeymoon. On August 30, 1998, Paul moved to Georgia. Deanna was in Louisiana between September 1-8 and 17-30, and October 1-9, 1998.
Dr. John Simoneaux, a psychologist and independent expert appointed by the trial court, evaluated both Craig and Deanna and concluded that granting Craig domiciliary custody and allowing visitation to Deanna in accordance with the geographic distance between the parties was in the best interest of Tyler. Dr. Simoneaux, in his deposition and report, was of the opinion that Craig offered the sort of stable environment and familiar surroundings essential to a four-year-old child.
The trial court found that Deanna "was not honest and forthcoming" with Craig with respect to her intended marriage and relocation. The trial court further held that Deanna induced Craig to execute the Joint Custody Plan "because she felt she would have an advantage in the custody matter." Thus, the trial court concluded *762 that Deanna "put her concerns and desires ahead of the considerations for the best interests of Tyler." The trial court further stated that it did not consider the Joint Custody Plan a "considered" decree and that Craig did not have the burden of showing a change in circumstances in order to be allocated the status of domiciliary parent.
After extensively reviewing the applicable law, the trial court determined that it was in the best interest of Tyler that he live with his father in Louisiana and imposed such in the Joint Custody Plan dated June 24, 1999. The trial court further ordered Deanna pay child support starting on September 1, 2000, and that Craig acquire and pay for any and all group health insurance upon Tyler which may be available through his employment. Additionally, Craig was ordered to pay sixty-five percent of any reasonable and necessary health care expenses not covered by health insurance, with Deanna required to pay the remaining thirty-five percent.
Deanna appeals the trial court's ruling, claiming the trial court erred in determining that her relocation to Georgia was not in the best interest of Tyler.

APPELLATE REVIEW
A trial court's determination regarding child custody is to be afforded great deference on appeal and will not be disturbed absent a clear abuse of discretion. Hawthorne v. Hawthorne, 96-89 (La.App. 3 Cir. 5/22/96); 676 So.2d 619, writ denied, 96-1650 (La.10/25/96); 681 So.2d 365. Every child custody case must be decided based only on its own particular facts and circumstances. Lindner v. Lindner, 569 So.2d 173 (La.App. 1 Cir.1990). In Kuhl v. Kuhl, 97-1725, pp. 2-3 (La.App. 3 Cir. 7/8/98); 715 So.2d 740, 741, we quoted Beard v. Beard, 599 So.2d 486, 488 (La.App. 3 Cir.1992), for the following proposition concerning the burden of proof required for a change in custody:
The best interest of the child is the sole criterion to be met in awarding or modifying custody under La.C.C. art.146(E).[1]Simmons v. Simmons, 554 So.2d 238 (La.App. 3rd Cir.1989). In custody modification cases, when a party attempts to modify a "considered decree", he bears the heavy burden of proving that the continuation of present custody is so deleterious to the child as to justify a modification of the custody decree, or of proving by clear and convincing evidence that the harm likely to be caused by a change of environment is substantially outweighed by its advantages to the child. Bergeron v. Bergeron, 492 So.2d 1193 (La.1986).
When no evidence is adduced at the district court level prior to the entry of the joint custody order which is sought to be modified, that joint custody decree is not a "considered decree" within the meaning of Bergeron, supra.

In such an instance, a heavy burden of proof is not appropriate; however, the moving party must still prove a material change in circumstances since the entry of the original decree and that the modification proposed is in the best interest of the child. McGee v. McGee, 552 So.2d 576 (La.App. 2 Cir.1989). "On appellate review, the determination of the trial court in establishing or modifying custody is entitled to great weight and will not be disturbed absent a clear showing of an abuse of discretion." Kuhl, 715 So.2d at 741, quoting Beard, 599 So.2d at 488, citing Thompson v. Thompson, 532 So.2d 101 (La.1988); Bergeron, 492 So.2d 1193.
An appellate court may not set aside a trial court's findings of fact in the absence of manifest error or unless it is clearly wrong. Stobart v. State, Through DOTD, 617 So.2d 880 (La.1993); Rosell v. ESCO, 549 So.2d 840 (La.1989). The appellate court must determine not whether the trier of fact was right or wrong, but *763 whether the factfinder's conclusion was a reasonable one, after reviewing the record in its entirety. Mart v. Hill, 505 So.2d 1120 (La.1987); Stobart, 617 So.2d 880; Rosell, 549 So.2d 840.

DISCUSSION
Some relevant factors that a court shall consider in determining the best interest of a child are found in La.Civ.Code art. 134, and may include:
(1) The love, affection, and other emotional ties between each party and the child.
(2) The capacity and disposition of each party to give the child love, affection, and spiritual guidance and to continue the education and rearing of the child.
(3) The capacity and disposition of each party to provide the child with food, clothing, medical care, and other material needs.
(4) The length of time the child has lived in a stable, adequate environment, and the desirability of maintaining continuity of that environment.
(5) The permanence, as a family unit, of the existing or proposed custodial home or homes.
(6) The moral fitness of each party, insofar as it affects the welfare of the child.
(7) The mental and physical health of each party.
(8) The home, school, and community history of the child.
(9) The reasonable preference of the child, if the court deems the child to be of sufficient age to express a preference.
(10) The willingness and ability of each party to facilitate and encourage a close and continuing relationship between the child and the other party.
(11) The distance between the respective residences of the parties.
(12) The responsibility for the care and rearing of the child previously exercised by each party.
Supplementing and, to a great extent, overlapping Article 134 is La.R.S. 9:355.12, which reads as follows:
In reaching its decision regarding a proposed relocation, the court shall consider the following factors:
(1) The nature, quality, extent of involvement, and duration of the child's relationship with the parent proposing to relocate and with the non-relocating parent, siblings, and other significant persons in the child's life.
(2) The age, developmental stage, needs of the child, and the likely impact the relocation will have on the child's physical, educational, and emotional development, taking into consideration any special needs of the child.
(3) The feasibility of preserving the relationship between the non-relocating parent and the child through suitable visitation arrangements, considering the logistics and financial circumstances of the parties.
(4) The child's preference, taking into consideration the age and maturity of the child.
(5) Whether there is an established pattern of conduct of the parent seeking the relocation, either to promote or thwart the relationship of the child and the non-relocating party.
(6) Whether the relocation of the child will enhance the general quality of life for both the custodial parent seeking the relocation and the child, including but not limited to financial or emotional benefit or educational opportunity.
(7) The reasons of each parent for seeking or opposing the relocation.
(8) Any other factors affecting the best interest of the child.
In its lengthy opinion, the trial court meticulously addressed each relevant factor of Article 134 and La.R.S. 9:355.12 before concluding that it was in Tyler's best interest that he reside in Louisiana with his father. Deanna admits that the *764 "best interest" of the child is the overriding concern of La.R.S. 9:355.12 et seq, as well as that of the Joint Custody Plan. However, Deanna cites Pittman v. Pittman, 94-952 (La.App. 5 Cir. 3/15/95); 653 So.2d 1211, writ denied, 95-1526 (La.9/29/95) 660 So.2d 881, as well as La. R.S. 9:355.1 et seq for the proposition that a parent may relocate a child by proving: 1) that there is good reason for the move, that is, that the move is made in good faith; and 2) the move is in the child's best interest. Deanna contends that she has met the "good reason" portion of the test delineated in Pittman because her new husband was transferred from his employment in Swartz, Louisiana to Marietta, Georgia and received a pay raise in conjunction with his move. She further contends that her economic situation would be improved to the point that she would not have to work outside of the home and, as such, would be able to spend more time with Tyler.
Relocating outside of the state does satisfy the "good reason" criterion of Pittman when employment has indeed been obtained by the removing parent or spouse; as it apparently has in this case. Thus, Deanna has satisfied the first portion of the Pittman test.
As for the second portion of the test, Deanna submits that it is in Tyler's best interest that he relocate with her in Georgia. In support of her contention, she claims that the considerations for a proposed relocation expressed in La.R.S. 9:355.12 weigh more heavily in her favor. She addresses each subsection of La.R.S. 9:355.12, concluding that in each instance Tyler is best served by moving with her to Georgia.
After an extensive review of the record, and in view of the vast discretion granted the trial court in child custody cases, we cannot say that the trial court was erroneous in its determination to grant Craig domiciliary custody of Tyler. We find that so particularly in light of the fact that Dr. Simoneaux determined that Tyler would be best served by staying with his father in Louisiana.
The record reveals that Deanna insisted Craig sign the initial custody agreement, while withholding from him her intention to relocate Tyler from Louisiana to Georgia. Her intention to move is supported by the findings that, on the same day Craig signed the custody agreement, she and Paul became engaged to be married. Deanna's mother, with whom Deanna had been living in Louisiana, had already moved to Georgia. Further, Paul was being transferred to Georgia and, in anticipation of his move, was building a family-sized home in Georgia. Deanna also admitted she felt that Craig's remarriage might give him an advantage in a custody dispute.
Respecting each parent's abilities to physically care for and rear Tyler as well as the love, affection, and the emotional ties between Tyler and each parent, we find that there are no significant differences. With regard to Tyler's relationship with his siblings and other significant persons, Craig has a decided advantage. Tyler has the companionship of a stepsister the same age, which Craig has adopted. He also has frequent contact with both of his paternal grandparents, despite their divorce, and also enjoys a good relationship with Craig's extended family, which includes many siblings, sisters-in-law, brothers-in-law and numerous nieces and nephews, several of which are Tyler's age. The record further reveals that each parent is equally financially capable of providing for Tyler.
Deanna, on the other hand, has one sibling, a brother living in Baton Rouge, however, no evidence of any frequency of contact between them could be found in the record. Additionally, she purposefully has no association with her biological father because, as she explained, he was unfaithful to her mother. Thus, Tyler's only contact with his extended family in Georgia would be with Deanna's mother.
*765 In the area of each parent's respective willingness and ability to foster a relationship with the other parent, the trial court found, and the record supported, a determination in favor of Craig. The trial court found that, prior to the signing of the Joint Custody Plan of July 10, 1998, Deanna afforded Craig visitation with Tyler "whenever" his work schedule allowed. After the plan was signed, Deanna only allowed Craig the visitation provided therein, when she could have allowed him more access. Additionally, though Craig requested a phone number at which she and Tyler could be reached in Georgia, Deanna made excuses as to why she could not provide such a number. The trial court found this behavior reflected an ambivalence as to the consequences moving to Georgia might have on Tyler. The trial court further explained that Deanna's decision to remarry knowing that she would have to move far away from Tyler's usual surroundings and extended family indicated that "she prioritized her wants and needs over that of Tyler."
The trial court also made particular note of one occasion in January 1999, in which there was supposed to be an exchange of Tyler's physical custody from Craig to Deanna at a predetermined location in Alabama. Craig's testimony, supported with news footage, revealed that the weather predicted to occur along the proposed routes of the parties was not suitable for travel. A video-taped news report introduced by Craig detailed extremely dangerous and violent thunderstorms which produced hail, flooding, gale force winds, and fifty-five tornados within a twenty-four hour period. Noting the weather, Craig advised Deanna that he would not meet her on the agreed upon day, but would wait a day until the storm system was beyond their intended routes. In spite of the weather, Deanna insisted Craig travel to their meeting place and was extremely angry when she arrived at the location to find Craig had not braved the weather to make the exchange. The trial court found Deanna's insistence that custody be transferred "on time," rather than recognizing the importance of Tyler's safety, made her concerns about Tyler's best interests suspect as well as raised questions as to her willingness to promote a good relationship between Craig and Tyler.
Given the trial court's painstaking and thorough analysis of this issue, the more than adequate record to support the trial court's reasoning, and the vast discretion afforded it in custody determinations, we cannot say the trial court was erroneous in granting Craig domiciliary custody of Tyler.

CONCLUSION
The judgment of the trial court is affirmed. Costs of this appeal are assessed to defendant-appellant, Deanna Renee Franklin.
AFFIRMED.
NOTES
[1] Article 146 was redesignated as Article 131 by the Louisiana State Law Institute pursuant to Acts 1990, No. 1008, § 8, and Acts 1990, 1009, § 10, both effective January 1, 1991.