NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

08-1215

RENEE T. CHARK

VERSUS

STEVEN CHARK, SR.

************

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 226,144
HONORABLE GEORGE C. METOYER, JR., DISTRICT JUDGE

************

MICHAEL G. SULLIVAN
JUDGE

************

Court composed of John D. Saunders, Michael G. Sullivan, and James T. Genovese, Judges.

AFFIRMED.

Gregory N. Wampler
Attorney at Law
607 Main Street
Pineville, Louisiana  71360
(318) 473-4220
Counsel for Plaintiff/Appellant:
        Renee T. Chark

Mary Lauve Doggett
Attorney at Law
2025 Jackson Street
Alexandria, Louisiana  71301
(318) 442-9579
Counsel for Defendant/Appellee:
        Steven Chark, Sr.

**Robert G. Levy**
**Ruby Norris Freeman**
**Jerry W. Deason, Jr.**
**Assistant District Attorneys**
**921 Ninth Street**
**Alexandria, Louisiana  71301**
**(318) 442-9200**
**Counsel for:**
        **State of Louisiana**

**SULLIVAN, Judge.**

This is a child custody matter. Plaintiff, Renee Chark (Renee), appeals a judgment of the trial court which modified the prior custodial arrangement between her and her ex-husband, Steven Chark, Sr. (Steven). For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

Renee and Steven were married on May 30, 1997. They had three children during their marriage: Ashley Chark, born on July 3, 1997, and twins, Steven Chark, Jr., and Stevon Chark, born on April 9, 2004. The couple divorced on June 25, 2007. Prior to their divorce, they entered into a stipulated custody agreement in open court. The agreement was reduced to judgment and signed by the trial court on February 8, 2007. The agreement provided that Renee and Steven would share joint custody of the children, with Renee designated as the domiciliary parent. Steven was ordered to pay to Renee $1,036 per month in child support. He was awarded visitation on the first and third weekends of each month during the school year and every other week during the summer.

On September 6, 2007, Steven filed a Motion for Temporary Restraining Order (TRO) and Rule for Modification of Custody and Support. He alleged that, without his knowledge or consent, Renee had moved their three children from her home in Alexandria, Louisiana, to Houston, Texas. Steven attached to his motion a letter dated August 24, 2007, wherein Renee granted Demetra Ellis[1] the guardianship of her daughter, Ashley, for the purpose of enrollment in school. According to Steven, the guardianship was executed without his knowledge or consent. He stated that he had

---

[1]Demetra Ellis is Renee's cousin.

1

made numerous unsuccessful attempts to locate and/or communicate with Renee regarding her whereabouts and the circumstances surrounding the care and custody of his children. He requested the issuance of a TRO granting him immediate physical custody of his children pending a hearing on his rule to modify custody. An order was signed on September 6, 2007, prohibiting Renee from removing the children from Louisiana and granting Steven temporary custody of the children until further order of the court. In addition, Renee was ordered to show cause on September 24, 2007, why Steven should not be granted the sole custody of their children, or in the alternative, why: (1) they should not be awarded joint custody with Steven being named the primary domiciliary parent and Renee being awarded reasonable visitation and (2) the court should not recalculate the child support award.

On December 6, 2007, Renee filed a Motion to Vacate and Rescind the September 6, 2007 ex parte order awarding custody to Steven. Renee claimed that the order had been improvidently issued because Steven was aware, prior to the filing of the ex parte order, that she had been hospitalized and that the children were in Texas on a temporary basis until her release. In addition, she claimed that an ex parte order changing custody "is a drastic remedy, is illegal and should not have been issued." Steven was ordered to show cause on January 14, 2008, why the ex parte order should not be recalled, vacated, and set aside. Because the hearing on his rule to modify custody had been continued several times but never heard, Steven requested that his rule to modify be reset to January 14, 2008, as well.

The parties and their attorneys appeared before the trial court on January 14, 2008, and entered into a Consent Interim Judgment. Therein, they agreed that Renee, Steven, and their daughter, Ashley, would undergo psychological/custody evaluations

to be performed by Dr. Kenneth Binns and that Dr. Binns would report his findings to the trial court and to counsel for the parties. The matter was rescheduled for April 14, 2008. In the meantime, the parties agreed that they would equally share the physical custody of their children on an alternating weekly basis.

A hearing took place on June 30, 2008. In conjunction with the hearing, the parties submitted a Joint Stipulation, which provided that: (1) the reports of Dr. Binns shall be admissible in this matter; (2) as of September 7, 2007, Steven was in arrears in his child support payments in the amount of $5,122; and (3) as of June 30, 2008, Steven had paid the arrears that were due and owed no child support. Both Steven and Renee testified at the hearing. The trial court admitted the following exhibits into evidence: the Joint Stipulation; Dr. Binns' psychological evaluations of Steven and Renee, as well as an addendum containing his recommendations; Renee's medical records from Rapides Regional Medical Center; and Renee's medical records from W.O. Moss Regional Medical Center.

Ruling from the bench, the trial court found that there had been "a significant change of circumstances leading to the children not having any contact with [Steven]." The parties were awarded joint custody of the children, with physical custody alternating between them on a weekly basis. Steven was designated as the primary custodial parent. The parties agreed to submit worksheets with regard to child support. Written judgment was rendered on July 17, 2008. In addition to the rulings noted above, the judgment provided that the holiday schedule would be split as set forth in the prior custody order dated February 8, 2007. Steven was ordered to pay Renee $35 per month in child support.

Renee now appeals, presenting the following issues for our review:

3

1)   Was the trial court's September 6, 2007 ex parte order an illegal and improper modification of child custody?

2)   Was the trial court's June 30, 2008 judgment modifying child custody and support an abuse of discretion?

3)   Did the trial court err in finding a material change in circumstances?

4)   Did the trial court err in ruling that a week to week custody arrangement was in the best interest of the children?

## DISCUSSION

This court discussed the appellate standard of review to be applied when reviewing a trial court's modification of child custody in *Hillman v. Davis*, 02-685, pp. 5-6 (La.App. 3 Cir. 12/11/02), 834 So.2d 594, 598, wherein we stated:

> On appeal, a trial court's ruling on a change of custody request may only be disturbed if the reviewing court determines that the trial court abused its discretion in making its ruling. *Franklin v. Franklin*, 99-1738 (La.App. 3 Cir. 5/24/00), 763 So.2d 759. In addition, a reviewing court may set aside the trial court's finding of fact only upon determining that the trial court was manifestly erroneous or clearly wrong. *Rosell v. ESCO*, 549 So.2d 840 (La.1989). The issue is whether the trial court's conclusion was reasonable in light of the entire record. *Mart v. Hill*, 505 So.2d 1120 (La.1987).

> In *Bergeron v. Bergeron*, 492 So.2d 1193 (La.1986), the supreme court established a heavy burden for one attempting to modify a prior considered decree establishing a custodial relationship. The party seeking the change must prove that "the continuation of the present custody is so deleterious to the child as to justify a modification of the custody decree, or of proving by clear and convincing evidence that the harm likely to be caused by a change of environment is substantially outweighed by its advantage to the child." *Id.* at 1200. However, a parent seeking to modify a consent custody decree is required to establish that a material change of circumstances has occurred since the original decree and that the proposed custody arrangement is in the best interest of the minor child. *Schuchmann v. Schuchmann*, 00-0094 (La.App. 3 Cir. 6/1/00), 768 So.2d 614.

In *Roberie v. Roberie*, 33,168, p. 3 (La.App. 2 Cir. 12/8/99), 749 So.2d 849, 852 (citations omitted), the second circuit explained:

A considered decree is one for which evidence as to parental fitness to exercise custody is received by the court. By contrast, a judgment with a custody plan that was entered by default, was not contested or was merely entered by consent of the parties is not a considered decree.

### The September 6, 2007 Ex Parte Order

Renee cites *Hatchett v. Hatchett*, 449 So.2d 626 (La.App. 1 Cir.), *writ denied*, 457 So.2d 11 (La.1984), in support of her argument that the September 6, 2007 ex parte order was improper. She notes, however, that the *Hatchett* court determined that while "an ex parte custody order granted by a trial judge without notice, service of pleadings, and without affording a hearing to the parent having custody of the child is null and without effect[,]" a subsequent hearing and considered custody order can render moot any concerns as to the validity of a prior ex parte order. *Id.* at 628-29. Renee did not seek writs or an appeal from the September 6, 2007 order. Moreover, because Renee has, by her own admission, recognized that the June 30, 2008 judgment mooted any issues regarding the previously rendered ex parte order, we need not address whether that order was, in fact, improperly issued.

### The June 30, 2008 Judgment

Renee asserts that the trial court abused its discretion in rendering the June 30, 2008 judgment which modified the custody arrangement between her and Steven because no "material change in circumstances" had occurred since they had entered into the original stipulated custody decree in February 2007. She contends that the "sole actual" change in circumstances was the fact that the children spent a very short period of time living in Texas, which led to the improperly issued ex parte order modifying the custody arrangement. In addition, she claims that the result of the June

5

2008 judgment is to punish her for the actions of her family in taking the children to Texas when she was committed to a hospital in August of 2007.

Steven counters that Renee's severe emotional instability, which was clearly shown through the testimony and evidence produced at the June 30, 2008 trial, served as the material change of circumstances required to allow him to seek modification of the earlier consent custody decree. We agree.

Steven testified that in June of 2007 Renee had come to his house. When he opened the front door, she sprayed roach spray into his face and told him, "I wish you were dead." Their children were in Renee's car when this took place. As a result, Steven called the police, and a warrant was issued for Renee's arrest. Steven stated that later, in late August or early September of 2007, he had gone to Renee's house to exercise his visitation. When he arrived, it appeared that the house had been vacated. He then called his daughter's school and was told that she had withdrawn from the Rapides Parish School System and was now enrolled in school in Houston, Texas. Steven testified that he began trying to locate his children in Texas. He hired his present attorney to assist him in getting his children back in Louisiana. He stated that, for several weeks, he filed numerous motions in both Texas and Louisiana courts, and he drove to Houston every other day. According to Steven, for approximately one month he had no idea of the exact whereabouts of his children.

Steven testified that, at the time of trial, he and Renee had been exchanging custody of the children on a weekly basis for about eight months. He felt that the arrangement was working "pretty good" and that the children seemed fine. When asked what custodial arrangement would be in the best interest of his children, Steven responded that allowing both of them to raise the children would be in their best

6

interest. He stressed that he loved his children and that he was not trying to hurt his ex-wife, pointing out that although the ex parte order had given him custody of the children, he had voluntarily agreed to split their physical custody with Renee pending the hearing on his motion to modify custody.

Renee testified that, although she and Steven had problems in their relationship, he was a good father to their children. She admitted that she had a history of depression but claimed that the condition resulted from her marriage to Steven. At the time of the February 2007 consent agreement, she had been taking Lexipro, an anti-depressant, and Ambien, a sleep aid, both of which had been prescribed for her in October of 2006. Renee explained that she had gotten pregnant in May of 2007, which required her to get off those medications. At the time of trial, she had a five-month-old son who had been born as a result of that pregnancy, and she was receiving child support payments from her infant son's father, Charles Trusty.

Renee admitted that, in August of 2007, she had told someone at her place of employment that she had suicidal and homicidal ideations. She explained that those feelings arose after she discovered that Steven was having an affair in August of 2006. Nevertheless, she admitted that having been diagnosed with depression and suicidal and homicidal ideology would amount to a change in circumstances. Renee testified that she had been involuntarily committed from August 25 to August 29, 2007. She stated that she was not allowed to use the telephone during that time but that she had asked someone at the hospital to call her uncle to arrange for her mother to take the children to Houston. She admitted that she had not instructed anyone to contact Steven to tell him that the children were being taken out of the state. She had

7

intended to return to her home in Alexandria after she was released from the hospital, but she learned that there was a warrant out for her arrest on an aggravated battery charge arising out of the roach spray incident, and she was told that she needed an attorney. Therefore, she went to Texas to receive moral and financial support from her family and to retain an attorney.

Dr. Binns' psychological evaluations of Steven and Renee were admitted as exhibits, as were his recommendations in this matter. He believed that both Steven and Renee should participate in joint counseling to address their anger problems, to learn better communication skills, and to improve their parenting skills. Dr. Binns was of the opinion, however, that if those issues were satisfactorily addressed, Steven and Renee should be allowed "to share the children in an equal fashion."

We have reviewed the record in its entirety. Based upon that review, we cannot say that the trial court was manifestly erroneous or clearly wrong in its finding that a material change in circumstances had occurred since the original custody decree had been entered into in February of 2007, and in finding that an alternating week to week physical custody arrangement was in the best interest of the children. Accordingly, the June 30, 2008 judgment modifying the child custody and support was not an abuse of discretion.

### DECREE

For the foregoing reasons, we affirm the June 30, 2008 judgment. Costs of this appeal are assessed to Renee Chark.

**AFFIRMED.**

This opinion is NOT DESIGNATED FOR PUBLICATION.
Uniform Rules—Courts of Appeal, Rule 2–16.3.

8