JjDOUCET, Chief Judge.
Plaintiff, Angelique Decoux Duncan, appeals a judgment of the trial court rendered in accord with reasons for judgment dated April 9, 2001, and read and signed May 29, 2001, changing domiciliary custody of the minor children, Brittany Kay Decoux, born August 16, 1995, and Bre-leigh Kay Decoux, born October 4, 1993, from Angelique to the father of the children, Defendant, Glen John Decoux. 'We amend the judgment of the trial court and affirm the judgment as amended.
FACTS
The appeal record contains no transcript of the hearing held on May 24, 2000, and on July 18, 2000. Those omissions are imputable to Appellant, Angelique Duncan. See Barrois v. Wal-Mart Stores, Inc., 97-636 (La.App. 5 Cir. 11/25/97); 703 So.2d 798. However, the trial judge’s Reasons For Judgment contain a narrative of the facts in the case. Accordingly, we base our decision on the trial judge’s narrative. Id.; see also People’s Enterprise Inc. v. Labbe, 542 So.2d 784 (La.App. 3 Cir.1989). The trial judge’s Reasons for Judgment state the following:

REASONS FOR JUDGMENT

These parties were married on March 27, 1993. Of this marriage two children *1004 were born, namely, Breleigh Kay De-coux, born October 4, 1993, and Brittany Kay Decoux, born August 16,1995. The parties separated on October 22, 1996, and Angelique Decoux filed a Petition for Divorce and Custody on November 4, 1996. The parties entered into a Community Property Partition Agreement on December 6, 1996. They were divorced on August 1, 1997. Angelique Decoux filed a Rule for Custody on June 25, 1999. On July 23, 1999, the parties entered into a Consent Judgment in which they were granted joint custody and Angelique Decoux designated the domiciliary parent, and Glen Decoux being entitled to visitation as set forth in the Joint Custody Plan. Additionally Glenn [sic] Decoux was ordered to pay $600 per month in child support as well as paying one-half of all uncovered medical, dental, drug and optical care and expenses of the children. Glen Decoux | ¿was also ordered to pay $684.17 representing one-half of the previously incurred medical, dental, drug and optical expenses of the minor children. On January 5 of 2000, Angelique Decoux filed a Rule to Show Cause asserting that Glen Decoux was $100 in arrears on his child support for the month of July of 1999, and that he was failing to comply with some of the terms and conditions of the visitation privileges as well as was erratic in the payment of child support and that she desired to be granted judgment for the $100 in arrears, an income assignment order, and be found in contempt and be prohibited from cohabiting with members of the opposite sex. On January 25, 2000, Glen Decoux filed a Rule for Change of Custody. The Rule for Change of Custody was heard on February 25 of 2000. At the end of the evidence on February 25, 2000, the Court rendered oral reasons for judgment in which the Court dismissed the Rule for Contempt filed by Angelique Duncan, the Rule for Past Due Arrearages filed by Angelique Duncan, the Rule for Income Assignment filed by Angelique Duncan, and the Rule for Prohibition of Cohabitation by Angelique Duncan was rendered moot because of defendant’s recent marriage, and the Rule for Attorney’s Fees and Costs by Angelique Duncan was dismissed. The Court denied the Request for Change of Custody filed by Glen Decoux and ordered Glen Decoux to make his payments on the first and fifteenth of each month for the child support. Formal judgment in accordance therewith was signed on March 9, 2000. Subsequently, on March 16, 2000, Glen Decoux filed a Motion for New Trial and/or Reconsideration of the Denial of his Request for Change of Custody. Glen Decoux subsequently filed a Supplemental Motion for New Trial and/or Reconsideration of Judgment on April 11, 2000.
On May 24 of 2000, the Court heard argument on the motion and supplemental motion for new trial. The Court denied a new trial on all bases except a partial new trial for evidence relative to the alleged sexual abuse of Brittany which allegedly occurred sometime in March of 2000. Subsequently, evidence was taken by the Court on July 18, 2000, on the alleged sexual abuse of Brittany. At the conclusion of evidence on that date, the Court ordered Dr. Kenneth Bouillion of Lafayette to do interviews; do testing if he deemed necessary; and an evaluation in order to determine whether Brittany Decoux was touched in any inappropriate manner by a child known as Alex. He was asked to make recommendations to this Court concerning custody and/or visitation between Angelique Duncan and Glen Decoux, and *1005 any recommendations for counseling or treatment for Brittany Decoux and/or Breleigh Decoux and the child known as Alex. Subsequently, on March 27, 2001, the parties appeared in court and stipulated to the psychological report of Dr. Kenneth R. Bouillion dated March 26, 2001, introduced it into the record and the matter was submitted to the Court.
|3The relations between Angelique Duncan and Glen Decoux were amicable with regards to the children including custody and visitation until Angelique Duncan filed a Rule for Contempt against Glen Decoux on January 5 of 2000. Since that time there has been much acrimony between the parties. The Court heard extensive testimony relative to change of custody on February 25, 2000. The judgment denying a change of custody to Glen Decoux was signed on March 9, 2000. Subsequently, on March 16, 2000, Glen Decoux filed a Motion for New Trial and/or Reconsideration of the denial of the change of custody. Evidently this filing has caused the present controversy between the parties. On approximately April 3, 2000, Angelique Duncan made a complaint to Mr. Joseph Rochelle of the Department of Social Services of New Iberia complaining that her daughter Brittany had been sexually abused by a child named Alex who resided at the residence of Glen Decoux. According to Mr. Rochelle, Mrs. Duncan called approximately two weeks previously to state the complaint and was advised to take the child to see a doctor. The child was examined by the doctor, and the doctor could find no evidence of penetration or of sexual abuse. On April 3, 2000, Angelique Duncan complained that her child Brittany stated that the child Alex at the residence of Glen Decoux on two or three occasions had touched her private and put his finger in her private. Angelique Duncan led Joseph Rochelle to believe that the child Alex was approximately 12 years of age. In fact at the time the child Alex was only seven. At the time the child Brittany was four years eight months old. Brittany and her older sister Breleigh regularly visited at the [sic] Glen Decoux’s residence, and a child named Alex resides at that residence. Breleigh at the time was six years six months old. Joseph Rochelle interviewed Brittany. Brittany told him at the interview that her mother, Angelique Duncan, told her to tell him that Alex had touched her private. Brittany denied any improper touch. Breleigh was also interviewed by Joseph Rochelle. Breleigh denied any improper touching to herself or to her sister, Brittany. Joseph Rochelle testified that Angelique Duncan did not advise him that there was an ongoing custody dispute when she brought the child Brittany to him for interview and when the complaint was made. When Rochelle determined the true age of Alex as seven, he was shocked because boys this age do not usually have these types of tendencies. He found it to be unusual that there would be a complaint against a boy who was only seven. His testimony was that the child’s age was substantially misrepresented to him by Angelique Duncan. After interviews with everyone involved, Joseph Rochelle determined that this was an invalid complaint and that there had been no abuse.
Subsequent thereto Angelique Duncan took the two girls to Marcella Manual, a mental health therapist specializing in children’s mental health services. She was first consulted on June 5, 2000. She talked to Angelique Duncan and to the two children. Angelique Duncan |4told *1006 her that there was no custody dispute going on in June and that custody was already decided. Marcella Manual indicated that it was not unusual for children this age to experiment. She stated that it would not be unusual for children this age to touch one another. Generally, however, if the older child is selecting a younger child then that can be a problem if the younger child is opposed. Mrs. Manual testified that Brittany told her that she had been touched. Bre-leigh denied any improper touching both to herself and to Brittany.
Dr. Kenneth Bouillion interviewed all of the parties as well as the children. Breleigh denied any inappropriate touching either of herself or her sister. Brittany also denied any inappropriate behavior from either Alex or Jacob and described having a good relationship with them. Dr. Bouillion concluded that there was no basis for the allegations of inappropriate sexual contact with the girls.
Evidence also proves that Angelique Duncan during the period of time in which she was in contact with the Department of Social Services was continuing to allow the children to visit with Glen Decoux in the presence of Alex and Jacob. Additionally, the evidence preponderates that she did not advise Glen of the alleged touching. Accordingly, it seems inappropriate behavior on her part. If she truly believed that there had been inappropriate touching then she should have advised Glen in order that the child might have been protected. On the other hand, if she did not believe there was any inappropriate touching then there would have been no reason to advise Glen.
In the previous hearing herein on February 25, 2000, after hearing the testimony of Mr. and Mrs. Duncan, I concluded that the evidence convinced me that they had lied under oath about incidents in which they appeared inappropriate and which looked bad for them. I found that Mrs. Duncan was intoxicated and that she told Mr. Duncan that she might kill herself if he wouldn’t return to her. Both Mr. and Mrs. Duncan intentionally lied at that proceeding. As stated in my Reasons for Judgment, I believe they lied in order to try to misrepresent to this Court what actually occurred. At that time the Court did not find that sufficient to deprive Mrs. Duncan of custody. However, subsequent to that hearing and in April of 2000 and thereafter, in this Court’s opinion, Mrs. Duncan has continued to misrepresent the facts in order to try to help herself in this contested custody situation. First of all, she did not tell Joseph Rochelle in making the sexual abuse complaint that there was a custody dispute ongoing. Specifically she denied to Marcella Manual when she took Brittany to her for the alleged sexual abuse that there was an ongoing custody dispute in June of 2000. As the Court has already noted, the Petition for Reconsideration of the Custody Decree was filed by Glen Decoux in mid March of 2000. At the time of the complaint to Rochelle on April 3, 2000, and at the time of the complaint |Bto Marcella Manual, June 5, 2000, Angelique Duncan well knew that the custody was still in dispute because of the new filings.
Additionally, common sense tells us that children of this age may experiment with one another out of curiosity and by touching. A more appropriate manner of handling this for a parent would have been to have a discussion with Glen Decoux and Janet Decoux relative to what was happening on visitations at their residence. Instead, Angelique Duncan misrepresented the age of Alex to the case worker, Joseph Rochelle, did *1007 not advise him of the impending custody dispute, and misrepresented that there was no custody dispute to the case worker, Marcella Manual. Additionally, she continued to let the girls go to the residence of Glen Decoux without any warning which indicates that she did not believe that any abuse had actually taken place. If she did believe that abuse had taken place then she acted improperly in not seeking protection from Glen and Janet Decoux from any possible future abuse. Either way her actions were improper and do not indicate proper judgment for a parent. Her actions corroborate Brittany’s statement that her mother told her to tell that Alex touched her.
The Court is additionally concerned at this point of Grady Duncan and his relationship with the two minor girls. Mr. Duncan is the new husband of Angelique Duncan. The Court at the previous hearing found that he had lied under oath to the Court concerning activities of he and Angelique Duncan. At this court hearing he indicated inappropriateness and hostility in his dealings with Glen Decoux. Further he indicated that he cursed Glenn [sic] Decoux and that he threatened him. He indicated that he was mad at Glen Decoux and so mad that he was glad he was not there at the time because he might hurt him. He indicated in a threatening way that something is going to happen sooner or later between the two of them because he is tired of wasting his money on this custody dispute. The testimony of Glen Decoux also indicates that Grady Duncan has threatened him if he does not leave his family alone in regards to legal proceedings. Additionally Grady Duncan lied to Glenn [sic] Decoux concerning whether the children were in residence when Glen Decoux had gone there for them. These actions of Grady Duncan and his inability to be concerned for the welfare of the children and to control his temper is another reason for which this Court now considers a change of custody.
This Court considers the previous perjury of Angelique and Grady Duncan, and the present misrepresentations of Angelique Duncan to various persons charged with investigating this matter and misrepresentations to the case worker, Marcella Manual. The Court also considers the action of Angelique Duncan with reference to this whole alleged sexual abuse incident as inappropriate and unacceptable for someone who has custody of minor children. In addition the volatile | (¡personality and temper of Grady Duncan and his threats to the father of the children further convinces this Court together with his prior pexjury that the children do not belong in this atmosphere.
Accordingly, for the reasons given hereinabove this Court does hereby change the custody of the minor children Brittany and Breleigh from Angelique Duncan to Glenn [sic] Decoux. The parties are granted joint custody with Glen Decoux being the domiciliary parent.
LAW AND DISCUSSION
On appeal, Mrs. Duncan raises six issues which we will now address.
ISSUE NO. 1 — Whether a new trial should have been granted.
“A new trial may be granted in any case if there is good ground therefor, except as otherwise provided by law.” La. Code Civ.P. art. 1973. Furthermore, we agree with our brethren of the second circuit, who in Raburn v. Williams, 34,718, 34,719, pp. 9-10 (La.App. 2 Cir. 5/9/01); 786 So.2d 955, 960, stated:
The granting or denying of a motion for a new trial rests within the wide discretion of the trial court, and its determination should not be disturbed absent a *1008 clear abuse of discretion. Stephens v. State Through Dept. of Transp. and Development, 440 So.2d 920 (La.App. 2d Cir.1983), writ denied, 443 So.2d 1119 (La.1984); Burke, 712 So.2d at 1031 [Burke v. Baton Rouge Metro Airport, 97-947 (La.App. 1st Cir.05/15/98), 712 So.2d 1028]; Zatarain v. WDSU Television, Inc., 95-2600 (La.App. 4th Cir.04/24/96), 673 So.2d 1181; Hogan v. State Farm Auto Ins. Co., 94-0004 (La. App. 1st Cir.12/22/94), 649 So.2d 45, unit denied, 95-0215 (La.03/17/95), 651 So.2d 276.
Additionally, in Hawthorne v. Hawthorne, 96-89, p. 5 (La.App. 3 Cir. 5/22/96); 676 So.2d 619, 622, writ denied, 96-1650 (La.10/25/96); 681 So.2d 365, this court made the following observations:
“A new trial may be granted, upon contradictory motion of any party or by the court on its motion, to all or any of the parties and on all or part of the issues, or for reargument only.” La. Code Civ.P. art. 1971. Pursuant to Article 1971, the trial court has the power to define and limit the scope of the new trial. Russell v. McDonald’s Corporation, 576 So.2d 1213 (La.App. 5 Cir. 1991), citing Devillier v. Traders & General Insurance Company, 321 So.2d 55 (La.App. 3 Cir.1975), unit denied, |7325 So.2d 273 (La.1976). Once the trial court grants a new trial, it shall be assigned for a hearing in accordance with the rules and practice of court. La.Code Civ.P. art. 1977.
We find no abuse of the trial court’s discretion in this case.
ISSUE NO. 2 — Whether Glen Decoux should have had to meet the burden of proof of Bergeron v. Bergeron, 492 So.2d 1193 (La.1986) in order to modify the considered decree of the February 25, 2000 custody hearing.
The judgment following the February 25, 2000, hearing was not signed until March 9, 2000. Thereafter, on March 16, 2000, Glen Decoux timely filed his motion for a new trial. The judgment of March 9, 2000, would have been the first considered custody decree in these proceedings. However, because of the timely motion for a new trial and subsequent proceedings, that judgment never became final and the heightened burden of proof under Berger-on was never triggered.
The next three issues will be addressed together since they involve factual determinations by the trial court.
ISSUE NO. 3 — Whether or not a material change in circumstances occurred to warrant a change of custody.
ISSUE NO. 4 — Whether or not it was in the best interest of the children that a change of custody occur.
ISSUE NO. 5 — Whether or not it was manifest error for the trial court to disregard the findings of Dr. Kenneth R. Bouillion.
First, we note that the Joint Custody and Visitation Plan executed in concert with the Consent Judgment of July 23, 1999, provides that “Upon remarriage, either party may seek a modification of this plan.” Inasmuch as Glen remarried after the date of that judgment the issues of custody and visitation were properly before the court.
The transcript of the hearing of February 25, 2000, raised issues of Angelique’s homemaking and parenting skills. Angelique’s sobriety and truthfulness were also Lput at issue. Following the filing of Glen’s motion for a new trial, Angelique’s unsupported allegations of sexual abuse of Brittany by one of Glen’s stepsons came to light. Those allegations prompted an investigation by the Louisiana Department *1009 of Social Services. The investigation proved the allegations to be baseless. The allegations also prompted the court to order the parties undergo evaluation by a psychologist, Dr. Kenneth Bouillion. His evaluations resulted in the conclusion that there was no basis for the allegations of sexual abuse. Dr. Bouillion did not make any recommendation as to whether Angelique or Glen should be domiciliary parent; rather his report stated that “I would leave the selection of that [domiciliary parent] to the court.” Accordingly, issue number five is without merit.
Other evidence before the court included the fact that Angelique and her husband, Grady Duncan, live in a trailer in a trailer park in New Iberia; and that the trailer is generally in disarray. On the other hand, Glenn and his wife Janet, live in a well-kept, three bedroom, brick home in Youngsville. The home is located between the homes of Glenn’s parents and his sister.
Angelique works in a paint store and Grady’s employment history is spotty. Glen is an electrician who has been with the same employer for a number of years, and Janet is a certified first grade school teacher in Lafayette Parish. This is particularly significant since Breleigh, who has just started school, has had some academic difficulties.
Angelique and Grady have a history of repeated altercations and have separated on at least two occasions. Grady appears to have a problem with anger management. The court also found that both Angelique and Grady lied during the February 2000 hearing. Glen and Janet appear to have a stable marriage.
|sWhile Angelique was making allegations of sexual abuse to DSS, she failed to inform Glen of a possible problem so he could be watchful for any possible problem. Those allegations were investigated and proven false. Additionally, there was some indication that Angelique fabricated the allegations because of the custody dispute.
In Franklin v. Franklin, 99-1738, pp. 4-6 (La.App. 3 Cir. 5/24/00); 763 So.2d 759, 762-63 (footnote omitted), this court set out a detailed review of the appellate court’s function in custody cases:
A trial court’s determination regarding child custody is to be afforded great deference on appeal and will not be disturbed absent a clear abuse of discretion. Hawthorne v. Hawthorne, 96-89 (La.App. 3 Cir. 5/22/96); 676 So.2d 619, writ denied, 96-1650 (La.10/25/96); 681 So.2d 365. Every child custody case must be decided based only on its own particular facts and circumstances. Lindner v. Lindner, 569 So.2d 173 (La. App. 1 Cir.1990). In Kuhl v. Kuhl, 97-1725, pp. 2-3 (La.App. 3 Cir. 7/8/98); 715 So.2d 740, 741, we quoted Beard v. Beard, 599 So.2d 486, 488 (La.App. 3 Cir.1992), for the following proposition concerning the burden of proof required for a change in custody:
The best interest of the child is the sole criterion to be met in awarding or modifying custody under La.C.C. art. 146(E)[now art. 131]. Simmons v. Simmons, 554 So.2d 238 (La.App. 3rd Cir.1989). In custody modification cases, when a party attempts to modify a “considered decree”, he bears the heavy burden of proving that the continuation of present custody is so deleterious to the child as to justify a modification of the custody decree, or of proving by clear and convincing evidence that the harm likely to be caused by a change of environment is substantially outweighed by its advantages to the child. Bergeron v. Bergeron, 492 So.2d 1193 (La.1986).
*1010 When no evidence is adduced at the district court level prior to the entry of the joint custody order which is sought to be modified, that joint custody decree is not a “considered decree” within the meaning of Bergeron, supra.
In such an instance, a heavy burden of proof is not appropriate; however, the moving party must still prove a material change in circumstances since the entry of the original decree and that the | ^modification proposed is in the best interest of the child. McGee v. McGee, 552 So.2d 576 (La.App. 2 Cir.1989). “On appellate review, the determination of the trial court in establishing or modifying custody is entitled to great weight and will not be disturbed absent a clear showing of an abuse of discretion.” Kuhl, 715 So.2d at 741, quoting Beard, 599 So.2d at 488, citing Thompson v. Thompson, 532 So.2d 101 (La.1988); Bergeron, 492 So.2d 1193.
An appellate court may not set aside a trial court’s findings of fact in the absence of manifest error or unless it is clearly wrong. Stobart v. State, Through DOTD, 617 So.2d 880 (La.1993); Rosell v. ESCO, 549 So.2d 840 (La.1989). The appellate court must determine not whether the trier of fact was right or wrong, but whether the factfinder’s conclusion was a reasonable one, after reviewing the record in its entirety. Mart v. Hill, 505 So.2d 1120 (La.1987); Stobart, 617 So.2d 880; Rosell, 549 So.2d 840.
Our review of the record convinces us that there were changes in circumstances from the time of the consent decree to the issuance of the trial court’s reasons for judgment in this matter which made it in the best interests of the children to change their domiciliary parent from Angelique Duncan to Glen Decoux. We find no error in the ruling of the trial court. Assignments of Error numbers 3, 4, and 5 are without merit.
ISSUE NO. 6 — Whether or not it was legal error for the trial court to fail to apply LSA R.S. 9:335.
In Ellinwood v. Breaux, 32,730, p. 3 (La.App. 2 Cir. 3/1/00); 753 So.2d 977, 979, our brethren of the second circuit, with whom we agree, stated:
When the trial court finds that a decree of joint custody is in the best interest of the child, it does not necessarily require an equal sharing of physical custody. Nichols v. Nichols, 32,219 (La.App.2d Cir.9/22/99), 747 So.2d 120; O’Brien v. O’Brien, 30,001 (La.App.2d Cir.12/10/97), 704 So.2d 933; Pahal v. Pahal, 606 So.2d 1359 (La.App. 2d Cir.1992); Williams v. Williams, 540 So.2d 1013 (La.App. 2d Cir.1989). Substantial time, rather than strict equality of time, is mandated by the legislative scheme providing for joint custody of children. Carroway v. Carroway, 441 So.2d 494 (La.App. 2d Cir.1983); Boyd v. Boyd, 26,292 (La.App.2d Cir.12/7/94), 647 So.2d 414; Hickman v. Hickman, 459 So.2d 140 (La.App. 2d Cir.1984). It does not necessarily mean a 50/50 sharing of time.
While Appellant, citing Brown v. Brown, 96-743 (LaApp. 3 Cir. 2/26/97); 692 So.2d 458, concedes that La.R.S. 9:335 does not mandate the parents have the children equal time, she argues that in this case “a split sharing of time is feasible” since both parties live in New Iberia only Pk miles apart. The record does not support Appellant’s contention. According to the record Angelique lives in New Iberia while Glen lives in Youngsville. The wording of La.R.S. 9:335(A)(2)(b) makes it clear that it was the intent of the legislature to foster equal custodial time between the parents when such an arrangement was feasible *1011 and in the best interests of the children. The trial court’s judgment in the case sub judice comes close to that goal, especially during the school year. However, it is not clear to us just how much time Angelique is awarded with the children during the summer months. Accordingly, in an attempt to meet the legislative goal of equal time, whenever feasible and in the best interests of the children, we amend the judgment of the trial court to provide Angelique Duncan with six weeks visitation in the summer; said weeks to include her work vacation period.
Accordingly, for the reasons set out above we amend the judgment of the trial court to award Angelique Duncan six weeks visitation in the summer, said weeks to include her work vacation period. In all other respects, the judgment of the trial court is affirmed. Costs of this appeal are assessed 80% to Appellant, Angelique Duncan and 20% to Appellee, Glen Decoux.
AFFIRMED AS AMENDED.