834 So.2d 594 (2002)
Leslie Ray HILLMAN, Jr.
v.
Nancy R. DAVIS.
No. 02-0685.
Court of Appeal of Louisiana, Third Circuit.
December 11, 2002.
Rehearing Denied January 29, 2003.
*595 Terry W. Lambright, Attorney at Law, Leesville, LA, for Defendant/Appellant, Nancy R. Davis.
Bradley O'Neal Hicks, Dowden & Hicks, L.L.P., Leesville, LA, for Defendant/Appellee, Leslie Ray Hillman, Jr.
Court composed of ULYSSES GENE THIBODEAUX, SYLVIA R. COOKS, and JIMMIE C. PETERS, Judges.
PETERS, J.
Nancy Renelle Davis appeals the trial court's judgment removing her as sole custodian of her minor child, Kelsi DeAnne Davis, awarding joint custody of the minor child to her and the child's father, Leslie Ray Hillman, Jr., and naming Mr. Hillman as the domiciliary custodial parent. For the following reasons, we reverse the judgment of the trial court.

DISCUSSION OF THE RECORD
Kelsi DeAnne Davis was born on November 8, 1991. Her parents, residents of Vernon Parish, Louisiana, were never married. The current litigation has as its roots Mr. Hillman's August 11, 1992 petition to establish his paternal relationship with Kelsi. This pleading ultimately resulted in a December 11, 1992 consent judgment wherein Mr. Hillman was recognized as Kelsi's natural father, Ms. Davis was granted sole custody subject to Mr. Hillman's specific visitation rights, and Mr. Hillman was ordered to pay Ms. Davis $200.00 per month as child support.
Sometime after Kelsi's birth, her parents went their separate ways and married other people. In 1997, Ms. Davis graduated from college and, in August of that same year, began teaching in the Vernon Parish school system. In January 1999, she left the public school system to spend more time with Kelsi. However, she continued to work as a substitute teacher in the Vernon Parish system. On December 3, 2000, Ms. Davis accepted employment as an education specialist with the Federal Bureau of Prisons (Bureau) in Buna, Texas. This career move prompted the litigation that is now before us.
According to Ms. Davis, her Vernon Parish home and Buna, Texas home are approximately two and one-half hours driving distance apart. She testified that her first year of employment with the Bureau constituted a probationary period during which she could be terminated at any time. While serving her probationary period, Ms. Davis chose to leave Kelsi in Vernon Parish in the weekday care of her parents and sister. Each weekend, Ms. Davis returned to Vernon Parish to be with her daughter.
On September 24, 2001, over nine months after Ms. Davis began her employment with the Bureau, Mr. Hillman filed a rule to show cause, seeking to have the trial court change the sole custody award to one of joint custody and award him the designation as custodial parent. In his pleading, Mr. Hillman complained that Kelsi was living with her aunt, and not Ms. Davis, and that, on occasion, he had been denied his right to exercise his visitation *596 rights with Kelsi. Ms. Davis answered the rule asserting that Kelsi's current living arrangements were temporary. Additionally, she reconvened to Mr. Hillman's demand, seeking, among other things, an increase in monthly child support, an order requiring Mr. Hillman to provide Kelsi with dental insurance, and permission to relocate Kelsi to Texas. The trial court originally scheduled the matter for hearing on October 30, 2001. Mr. Hillman had the matter rescheduled twice, first to December 18, 2001, and then to February 8, 2002.
In December 2002, Ms. Davis completed her one-year probationary period, was granted permanent employment status by the Bureau, and moved Kelsi to Buna, Texas. Although Mr. Hillman filed a general denial answer to Ms. Davis' reconventional demand, he did not file any additional pleadings complaining of the relocation.
At trial, Mr. Hillman testified vaguely concerning his denial of visitation privileges. While asserting that Ms. Davis had denied him visitation privileges on occasion, Mr. Hillman did not specify how often or under what circumstances the denials occurred. Ms. Davis disputed Mr Hillman's assertion in this regard and testified that Mr. Hillman exercised his visitation privileges regularly. Additionally, Mr. Hillman acknowledged that his two-week offshore employment shifts interfered with his visitation and that, on occasion, his wife or mother would care for Kelsi during his visitation periods.
Mr. Hillman's primary initial complaint related to the fact that Kelsi was not physically residing with her mother. He testified that once Ms. Davis moved Kelsi to Texas, his concerns changed to the question of his daughter's supervision while Ms. Davis worked. However, he acknowledged that he took no steps to investigate the Texas supervision situation. Ms. Davis testified that she decided to leave Kelsi with her parents and sister during her probationary period to avoid subjecting Kelsi to new and strange surroundings without the security of job permanency. She felt that Kelsi's best interest would be served by having her sister and parents care for her during the week so that she would remain in a familiar school and family environment pending a final decision on relocation. The short drive to Buna allowed Ms. Davis to return to Vernon Parish every weekend to be with her daughter. Additionally, according to Ms. Davis, Kelsi had begun to make new friends in her environment and had adjusted very well to the relocation. Ms. Davis testified that any supervision concerns of Mr. Hillman are not well-founded because Kelsi is supervised by a neighbor when she is working. Before agreeing to allow the neighbor to look after Kelsi, Ms. Davis questioned other neighbors, including a Texas state police officer, about the neighbor's reliability and received excellent reports.
In his testimony, Mr. Hillman also expressed concern about Kelsi's school performance and her health. Kelsi has been diagnosed with attention deficit disorder and, according to her mother, has problems with emotional issues. Both Kelsi's second grade teacher, Joy Nell Wiggins, and her third grade teacher, Melody Parker Woodham, testified that Kelsi had poor work habits and was inattentive in class. Both teachers discussed the problems with Ms. Davis, and, although Kelsi's situation did not improve, both found Ms. Davis to be interested in Kelsi's educational well-being. Kelsi attended Simpson Elementary School during this time. However, in the fall of 2002, when Kelsi began the fourth grade, Ms. Davis transferred her to Leesville Elementary School. This transfer had a positive effect, as her grades immediately improved. Additionally, *597 Ms. Davis testified that she had recognized Kelsi's problems early on and had enrolled her in psychological counseling both in Louisiana and Texas.
The trial court took the matter under advisement and issued its judgment on the rule on February 14, 2002. In granting a change in custody, the court concluded the following:
The current custody order was entered on December 4, 1992. It was a stipulated judgment and the Bergenon [sic] Rule does not apply to this hearing. In the 1992 decree the mother, Nancy R. Davis, was granted sole custody with the father having specified weekend, holiday and summer visitation.
The testimony established that the mother was the primary caretaker of Kelsi, age 10 years. The mother testified that the father consistently exercised his weekend visitation, some holiday visitation, and some summer visitation. He has been a big part of the child's life according to the mother.
The evidence also established that the mother has provided for and cared for the child adequately. There are relatives and extended family members here in Vernon Parish on both the maternal and paternal sides which have been a significant part of the child's life.
Evidence showed that the mother lived full-time in Vernon Parish with Kelsi prior to December 4, 2000. Then, on that date, the mother began working in Beaumont, Texas and left Kelsi with an aunt during the week. The mother would return on weekends and stayed either with her sister or her parents. This arrangement went on until November 1, 2001 when the mother and Kelsi lived full-time with her parents. Then, in January, 2002, the mother moved permanently, with Kelsi, to Buna, Texas.
The court notes that the move to Texas was made without conferring in advance with the father or giving the statutory notice required. Also, the child's school was changed as a part of this and she now lives in and attends school in a place that is foreign to her.
Considering the factors of Civil Code Article 134, the court finds that the best interest of the child, Kelsi, would be served by remaining in Vernon Parish. This parish has been her home all of her young life. Her family, school and social ties are all here. Both parents can provide love, affection and educational guidance for the child. The mother has moved Kelsi, several times from one residence to another since December 2000. On the other hand, the father has been living in a stable environment that Kelsi is familiar with. Another major consideration is the mother's lack of communication with the father about decisions affecting the welfare of the child.
The trial court then granted joint custody to Ms. Davis and Mr. Hillman, designated Mr. Hillman as domiciliary custodial parent, and granted Ms. Davis physical custody of Kelsi in accordance with the same schedule as that of Mr. Hillman in the consent custody agreement. Ms. Davis appeals, asserting two assignments of error: 1) the trial court committed legal error in failing to find a material change in circumstances since the consent decree, and 2) the trial court's modification of the consent decree was clearly erroneous.

OPINION
In its reasons for judgment, the trial court made no mention of Mr. Hillman's complaints concerning visitation, supervision, or Kelsi's school performance. The basis of the decision to change the prior custody decree appears to be based entirely on the presence of extended family in *598 Vernon Parish. For the following reasons, we conclude that the trial court erred in its judgment changing the custodial arrangement.
On appeal, a trial court's ruling on a change of custody request may only be disturbed if the reviewing court determines that the trial court abused its discretion in making its ruling. Franklin v. Franklin, 99-1738 (La.App. 3 Cir. 5/24/00), 763 So.2d 759. In addition, a reviewing court may set aside the trial court's finding of fact only upon determining that the trial court was manifestly erroneous or clearly wrong. Rosell v. ESCO, 549 So.2d 840 (La.1989). The issue is whether the trial court's conclusion was reasonable in light of the entire record. Mart v. Hill, 505 So.2d 1120 (La.1987).
In Bergeron v. Bergeron, 492 So.2d 1193 (La.1986), the supreme court established a heavy burden for one attempting to modify a prior considered decree establishing a custodial relationship. The party seeking the change must prove that "the continuation of the present custody is so deleterious to the child as to justify a modification of the custody decree, or of proving by clear and convincing evidence that the harm likely to be caused by a change of environment is substantially outweighed by its advantage to the child." Id. at 1200. However, a parent seeking to modify a consent custody decree is required to establish that a material change of circumstances has occurred since the original decree and that the proposed custody arrangement is in the best interest of the minor child. Schuchmann v. Schuchmann, 00-0094 (La.App. 3 Cir. 6/1/00), 768 So.2d 614. The trial court in this matter correctly recognized that the December 4, 1992 consent judgment was not a considered decree subject to the stringent Bergeron requirements.
In her first assignment of error, Ms. Davis asserts that the trial court failed to find that Mr. Hillman had established the existence of a material change in circumstances before modifying the custody arrangement. She points out that the judgment on the rule does not contain a discussion or even a reference to such a finding. Thus, she urges this court to conduct a de novo review of the record rather than simply assume that the trial court made such a finding.
We agree that the trial court did not specifically mention the change of circumstance requirement of a Schuchmann analysis, although it does make reference to Ms. Davis's relocation to Texas and her moving Kelsi out of state without conferring with Mr. Hillman or giving him notice of the relocation. This is apparently a reference to La.R.S. 9:355.1 et seq. which governs the relocation of a child's residence by a custodial parent. Louisiana Revised Statutes 9:355.3(A) provides that the custodial parent "shall notify the other parent of a proposed relocation of the child's principal residence as required by R.S. 9:355.4." (Emphasis added.) Notification under La.R.S. 9:355.4 requires the following:
A. Notice of a proposed relocation of the principal residence of a child shall be given by registered or certified mail, return receipt requested, to the last known address of the parent no later than either:
(1) The sixtieth day before the date of the intended move or proposed relocation.
(2) The tenth day after the date that the parent knows the information required to be furnished by Subsection B of this Section, if the parent did not know and could not reasonably have known the information in sufficient time to comply with the sixty-day notice, and *599 it is not reasonably possible to extend the time for relocation of the child.
B. The following information, if available, shall be included with the notice of intended relocation of the child:
(1) The intended new residence, including the specific address, if known.
(2) The mailing address, if not the same.
(3) The home telephone number, if known.
(4) The date of the intended move or proposed relocation.
(5) A brief statement of the specific reasons for the proposed relocation of a child, if applicable. (6) A proposal for a revised schedule of visitation with the child.
C. A parent required to give notice of a proposed relocation shall have a continuing duty to provide the information required by this Section as that information becomes known.
Upon receipt of the notice required by La.R.S. 9:355.4, the non-custodial parent has twenty days in which to seek "a temporary or permanent order to prevent the relocation." La.R.S. 9:355.8(A). If the non-custodial parent fails to object within the specified twenty days, the custodial parent may then relocate the child's principal residence. La.R.S. 9:355.7. If a custodial parent gives the appropriate relocation notice, the proposed relocation "shall not constitute a change of circumstances warranting a change of custody." La.R.S. 9:355.11 (emphasis added). However, if the custodial parent fails to give the required relocation notice, that failure "may constitute a change of circumstances warranting a modification of custody." Id. (emphasis added).
Mr. Hillman testified that he received written notice through the mail that Kelsi had been relocated to Texas approximately four days after the relocation had occurred. However, he did not elaborate on the content of the written notice, nor did he complain of any insufficiency of the information provided. In fact, he testified that he had no objection to Ms. Davis' move to Texasonly a concern for his child's well-being in Texas. Ms. Davis testified that she provided Mr. Hillman with a certified letter informing him of Kelsi's relocation at approximately the same time as the relocation.
While it is clear that Ms. Davis contemplated moving Kelsi to Texas as soon as she acquired permanent employment status with the Bureau, it is not clear from the evidence presented by Mr. Hillman that she had access to all information required by La.R.S. 9:355.4(B) within sixty days of the contemplated relocation. It is clear that she forwarded notice within ten days of the actual relocation. Equally important, Mr. Hillman did not file an objection to the relocation as required by La. R.S. 9:355.8(A). Therefore, the question of notice or lack of notice was not an issue before the trial court in this phase of the custody litigation. That being the case, any failure of notice cannot be used to constitute a change of circumstances warranting a modification of custody.
Therefore, we find merit in Ms. Davis' first assignment of error that requires reversal of the trial court's judgment modifying the previous custody arrangement. Additionally, the parties stipulated at the beginning of the trial that, if Mr. Hillman was not successful in his efforts to change custody, Ms. Davis would be entitled to an increase in child support to $246.00 per month. We do not need to remand this matter to the trial court to effect this stipulation and award Ms. Davis that amount on appeal.

*600 DISPOSITION
For the foregoing reasons, we reverse the judgment of the trial court granting Leslie Ray Hillman, Jr. and Nancy Renelle Davis joint custody of their minor child, Kelsi DeAnne Davis, and naming Leslie Ray Hillman, Jr. the child's domiciliary custodial parent. In doing so, we reinstate the December 11, 1992 consent judgment in so far as it awarded the sole custody of Kelsi DeAnne Davis to Nancy Renelle Davis and awarded Leslie Ray Hillman, Jr. specific visitation privileges. Pursuant to the stipulation entered into at trial, we amend the December 11, 1992 judgment to require that Leslie Ray Hillman, Jr. pay Nancy Renelle Davis $246.00 per month as support of Kelsi DeAnne Davis. We assess Leslie Ray Hillman, Jr. with all costs of court.

REVERSED AND RENDERED.