STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

03-329


RAMONA ANN MARCANTEL WINZOR

VERSUS

ROBERT WADE WINZOR


************

APPEAL FROM THE
THIRTY-THIRD JUDICIAL DISTRICT COURT,
PARISH OF ALLEN, NO. 98-237,
HONORABLE JOHN P. NAVARRE, DISTRICT JUDGE

************

MICHAEL G. SULLIVAN
JUDGE

************

Court composed of Oswald A. Decuir, Michael G. Sullivan, and Elizabeth A. Pickett, Judges.


AFFIRMED.

K. Ray Rush
Attorney at Law
Post Office Box 704
Oakdale, Louisiana 71463
(318) 335-2759
Counsel for Plaintiff/Appellee:
    Ramona Ann Marcantel Winzor

W. Mitchell Redd
Attorney at Law
Post Office Box 3717
Lake Charles, Louisiana 70602-3717
(337) 433-8529
Counsel for Defendant/Appellant:
    Robert Wade Winzor

SULLIVAN, Judge.

Robert Wade Winzor appeals the trial court's denial of his request to become the domiciliary parent of his three children. For the following reasons, we affirm.

***Facts***

Robert Wade Winzor (Wade) and Ramona Debarge were previously married to each other. While married they had three children, T.A.W., born December 21, 1988; M.W.W., born December 28, 1993; and A.K.W., born January 28, 1997. The couple separated June 15, 1997, when Wade left the marital domicile in Monroe, Louisiana. Ramona, having no family in Monroe, returned to her hometown of Kinder to be near her family for support. They were divorced in October 1998. On February 8, 1999, pursuant to stipulations by the parties, a consent judgment, approving a joint custody plan, support payments, and medical expense reimbursement was signed. The custody plan provided for Wade and Ramona to share joint custody of the children with Ramona being the domiciliary parent and Wade having visitation privileges which were outlined in the plan.

In June 2002, the children went to Wade's home in Reeves for summer visitation. During that time, T.A.W. requested of Ramona that she be allowed to live with her father. While initially refusing, Ramona agreed to the request in early July. With Ramona's knowledge, Wade registered T.A.W. to attend school in Beauregard Parish. After school started, Wade asked Ramona to amend the custody plan to reflect that he was the domiciliary parent of T.A.W. Ramona refused and thereafter requested that Wade return T.A.W. to her home. At trial, Ramona testified that, prior to allowing T.A.W. to move to Wade's, she told Wade and T.A.W. that her permission was for a trial basis only. This was not disputed. On August 27, 2002, she filed a report with the Allen Parish Sheriff's Department because Wade refused

to return T.A.W. to her. T.A.W. was scheduled to visit Ramona the weekend of August 30, 2002. That evening, Wade's mother and uncle brought T.A.W. to the parties' usual exchange location, but T.A.W. refused to go with Ramona. Ramona sought the assistance of the Allen Parish Sheriff's Department to obtain custody of T.A.W., but the Sheriff's Department would not remove T.A.W. from Wade's custody without a court order, and Wade would not force T.AW. to go with Ramona. On September 5, 2002, Ramona filed a rule for contempt, and Wade filed a rule to modify the custody plan: Ramona sought to enforce the 1999 custody plan; to have the court order Wade to pay his share of the children's medical expenses; and to hold Wade in contempt, and Wade sought to amend the custody plan to designate him as domiciliary parent of the children. Wade obtained an order allowing T.A.W. to live with him until a hearing on the rules could be held. After the hearing, the trial court designated Ramona as domiciliary parent of the children and ordered that Wade reimburse her $2,556.62 in medical expenses. The trial court did not hold Wade in contempt.

When this matter was tried, T.A.W. was thirteen years old, M.W.W. was almost nine years old, and A.K.W. was five years old. T.A.W. is a bright, intelligent, normal young lady. She testified in chambers and expressed her desire to live with Wade. M.W.W. has been diagnosed as globally developmentally delayed and has slight mental retardation. He has some autistic characteristics and some anger-control problems. Teaching M.W.W. and caring for him requires much patience and persistence. A.K.W. has a serious heart defect which has required two open-heart surgeries and one closed-heart surgery. The first surgery was performed when she was four-weeks old. Her most recent surgery was during the summer of 2001. Her

2

activities, medications, meals, and physical status must be closely monitored. Ramona testified that M.W.W. and A.K.W., especially A.K.W., missed T.A.W. while she lived with Wade.

Wade appeals only the denial of his request for change in domiciliary designation. He assigns six errors by the trial court. Five of the assigned errors relate to factors enumerated in La.Civ.Code art. 134. Specifically, he asserts that the trial court failed to consider the facts of the case as they relate to factors (1), (4) and (9), (5), (10), and (12). His last assignment is that the trial court erred in finding that the best interest of the children is served by living together. In the alternative, Wade seeks custody of T.A.W. individually.

### *Law and Discussion*

> On appeal, a trial court's ruling on a change of custody request may only be disturbed if the reviewing court determines that the trial court abused its discretion in making its ruling. In addition, a reviewing court may set aside the trial court's finding of fact only upon determining that the trial court was manifestly erroneous or clearly wrong. The issue is whether the trial court's conclusion was reasonable in light of the entire record.

*Hillman v. Davis*, 02-685, pp. 5-6 (La.App. 3 Cir. 12/11/02), 834 So.2d 594, 598 (citations omitted).

A party seeking to modify a custody decree which was a stipulated judgment must prove "(1) that there has been a material change of circumstances since the original custody decree was entered, and (2) that the proposed modification is in the best interest of the child." *Evans v. Lungrin*, 97-541, 97-577, p. 13 (La. 2/6/98), 708 So.2d 731, 738. If the original custody decree is a considered decree, *i.e.*, one for which the trial court received evidence of parental fitness, the party seeking a modification must prove that continuation of the present situation is "so deleterious

3

to the child as to justify a modification of the custody decree, or of proving by clear and convincing evidence that the harm likely to be caused by a change of environment is substantially outweighed by its advantages to the child." *Bergeron v. Bergeron*, 492 So.2d 1193, 1200 (La.1986).

Because the Winzors' custody decree is a consent judgment, Wade does not have to meet the heavier burden of *Bergeron*. He must, however, prove both prongs of the *Evans* standard, *i.e.,* that a material change in circumstances has occurred since the entry of the consent judgment and that his proposed modification is in the children's best interest.

***Material Change in Circumstances***

The trial court performed only a best-interest analysis under La.Civ.Code art. 134; it did not make a specific finding of a material change in circumstances. Therefore, we must determine *de novo* whether a material change in circumstances that triggers a best-interest analysis under Article 134 has occurred. When Wade and Ramona separated, they lived in Monroe where Wade was working for the Union Pacific Railroad. After the separation, in an effort to move closer to the children, Wade arranged new work assignments and relocations with his employer. Eventually, he achieved his goal and was assigned to the Lake Charles area. He currently lives in DeQuincy, which is relatively close to Kinder, where the children live with Ramona, and is much more involved in the children's lives than he was previously. He and Ramona have both remarried.

Wade has established that there has been a material change in circumstances of the parties and the children and will now address his assignments of error regarding the trial court's consideration and analysis of the Article 134 factors.

4

***Best Interest of the Children***

In its analysis, the trial court considered Wade's involvement and presence in the children's lives and his financial support of them; the stability of Ramona's presence in the lives of the children and their living arrangements; M.W.W.'s mental limitations and educational needs; A.K.W.'s health problems; T.A.W.'s desire to live with Wade; the desires of M.W.W. and A.K.W. for T.A.W. to continue living with them; and the best interest of all three children. The trial court did not, however, correlate each factor that it discussed with an Article 134 factor, but it is not required to do so.

In *Weaver v. Weaver*, 01-1656, p. 5 (La.App. 3 Cir. 5/29/02), 824 So.2d 438, 442, this court observed that "[t]he factors under Article 134, are just that—a series of guidelines the trial court may use in determining which parent can better provide for the best interests of the child." When determining the best interest of the children, the trial court must weigh and balance factors favoring or opposing custody on the basis of the evidence presented in each case. *McKinley v. McKinley*, 25,365 (La.App. 2 Cir. 1/19/94), 631 So.2d 45. The weight to be given each factor is left to the discretion of the trial court. *Jones v. Rodrigue*, 00-899, 00-900 (La.App. 1 Cir. 11/3/00), 771 So.2d 275.

The trial court's consideration of these factors were in favor of Ramona, except on the issue of housing, which it determined was equal.

***Assignment of Error Number 1***

Wade's first assignment of error is that the trial court failed to consider the facts presented as they relate to factor (3) of Article 134 which provides:

> The capacity and disposition of each party to provide the child with food, clothing, medical care, and other material needs.

The trial court determined that Ramona has provided most of the support to the children with Wade contributing only a small part of assistance to her. In its discussion, the trial court referenced "occasional visits" by Wade from 1998 until 2000. Wade takes issue with this statement contending that he saw the children monthly during that time and that Ramona's relocation to Kinder from Monroe contributed to his infrequent visits. Ramona testified that Wade did not see the children very much during the last six months of 1997, that he saw them every three or four months during 1998, every two to three months during 1999, every three weeks or so in 2000, and that during 2000 he began seeing the children every other weekend. Wade testified that he visited the children about once a month until 2000. His current wife testified that he did not visit the children every other weekend until 2000. Wade's testimony regarding how often he visited the children differs from Ramona's testimony, and the trial court apparently accepted her testimony over his, which is its prerogative.

Wade's argument insinuates that Ramona is partially to blame for his infrequent visitation with the children in 1997, 1998, and 1999 because she moved to Kinder. When Wade left the matrimonial domicile, Ramona had little or no choice but to return to Kinder. She had no job and no family to help her with the three small children, which included a three-year-old with developmental problems and a five-month-old with a severe heart problem. Regarding the separation and her return to Kinder, Ramona testified that on one occasion Wade left for work and did not return for a week without letting her know of his whereabouts. On two other occasions, he left for some time but then returned. Then, in June 1997, he told her that he was leaving again. At that time, she told him that if he left, she would move back to

6

Kinder with the children. Under the circumstances, we do not find her actions improper. Furthermore, we recognize that the distance between Monroe and Kinder is not short; however, Wade's parents live fairly close to Kinder, allowing him to pick up the children and stay at his parents' home for visitation, rather than make two round-trips to exercise his visitation. Ramona is not to blame for Wade's infrequent visits with the children prior to 2000.

Wade also takes issue with the trial court's discussion of his payment of child support. There is no indication in the record of whether or not he paid support to Ramona before their February 1999 stipulation, but it is clear that, based on unconfirmed comments by the children, Wade made a unilateral reduction in his child support payments from $1100.00 to $600.00 in early 2001 and that Ramona had to file suit to have the payments reinstated. This $500.00 reduction in support for three children is substantial, especially when it is for a three-month period. Although Wade is repaying the $1500.00, it is only at the rate of $100.00 per month. Ramona will not recoup the full amount withheld for fifteen months. This reduction reflects negatively on Wade's disposition to assist Ramona in providing for the children.

We find no error with the trial court's conclusion that Wade has not provided as much assistance to the children as Ramona has.

### Assignment of Error Number 2

Wade's next assignment is that the trial court failed to consider and apply the fourth and ninth factors of Article 134. These factors provide respectively:

> (4) The length of time the child has lived in a stable, adequate environment, and the desirability of maintaining continuity of that environment.

> (9) The reasonable preference of the child, if the court deems the child to be of sufficient age to express a preference.

7

Wade alleges that the trial court made factual errors concerning these factors and did not consider that Ramona allowed T.A.W. to move in with him and that T.A.W. remained with him until December 2002. His argument references the following passage in the trial court's reasons:

> At the request of his fourteen-year-old daughter, Mr. Winzor allowed [T.A.W.] to move into his home in July 2002. Thereafter, Mr. Winzor presented change of custody papers to Ms. DeBarge. Ms. DeBarge refused to sign change of custody papers and demanded that [T.A.W.] return to live in her home in accordance with the Consent Judgment, signed February 8, 1999. In lieu thereof, Mr. Winzor enrolled [T.A.W.] in school in East Beauregard School and filed suit asking to be the domiciliary parent of all three children.

The first statement is correct but incomplete because it fails to recognize that Ramona agreed that T.A.W. could move to Wade's in July 2002. The last statement is incorrect because it indicates that Wade acted alone when he enrolled T.A.W. in school, when in fact, Ramona assisted him in gathering the documentation needed to enroll T.A.W. in East Beauregard School, then changed her mind about T.A.W.'s move to Wade's. We note again, however, that Ramona testified and was uncontradicted, that she told Wade and T.A.W. that the move was on a trial basis.

Wade also alleges that the trial court ignored T.A.W.'s preference to live with him. This allegation is incorrect. The trial court acknowledged T.A.W.'s preference to live with Wade. Just because the trial court ultimately determined that it was in the best interest of the children for T.A.W. to live with Ramona does not mean that her preference was ignored. A child's preference to live with a parent is just one of many factors and circumstances that a trial court must consider and weigh when determining custody. *Weaver*, 824 So.2d 438. A trial court's custody determination requires consideration of a number of factors, and the court is free to disregard a child's preference to live with one parent. *Id.*

8

While the trial court did commit error with regard to the factual finding noted above, we will consider the error in light of all of the evidence at the conclusion of our discussion.

### *Assignment of Error Number 3*

Wade argues, "The Trial Court clearly placed much weight on the supposition that Ramona Winzor has stability and the help of extended family." He counters the trial court's finding that Ramona has much support and assistance from her family with the admission by Ramona's mother that she has made disparaging comments about him. Additionally, he asserts that Ramona's mother tries to enlist Ramona's assistance in alienating the children's affection for him. He cites factor (5) of Article 134, which provides:

> The permanence, as a family unit, of the existing or proposed custodial home or homes.

Mrs. Marcantel, Ramona's mother, admitted that she has made statements like Wade is "dishonest and irresponsible" and "if it were not for your mother you would not have shoes on your feet" to the children. These comments are in contravention of our custody scheme and are distasteful, and we do not condone them. However, we also observe that these comments do not rise to the level of the *actions* of the *parents*, not grandparents, in *Masters v. Masters*, 35,477 (La.App. 2 Cir. 10/2/01), 795 So.2d 1271, and *McIntosh v. McIntosh*, 33,908 (La.App. 2 Cir. 8/31/00), 768 So.2d 219, which are cited by Wade in support of this assignment.

Mrs. Marcantel has witnessed first hand Ramona's struggle to provide the best that she can for the children under the circumstances. She has assisted Ramona and contributed much to the stability of the lives of Ramona and the children, providing her personal assistance and emotional support. While she may perceive Wade as

9

"irresponsible," she should not make such statements to the children. There is no evidence that Ramona makes such comments or that she condones those made by her mother.

This negative aspect is unfortunate and should not continue, but does not diminish the solidity of the home that Ramona has established for the children.

### Assignment of Error Number 4

In his fourth assignment of error, Wade asserts that the facts do not weigh in Ramona's favor as they pertain to factor (10) of Article 134 which provides:

> The willingness and ability of each party to facilitate and encourage a close and continuing relationship between the child and the other party.

He points to Ramona's allowing T.A.W. to move in with him then changing her mind. Ramona testified that before she agreed to the move, she told Wade that the move was on a trial basis. He did not dispute her testimony. We also note that when Ramona allowed T.A.W. to move, Wade agreed that T.A.W. would visit Ramona every other weekend but did not enforce the visitation schedule after learning that Ramona changed her mind. Thus, the actions of both parties reveal that they have got to work on this aspect of their parenting of the children. This factor does not weigh in favor of or against either party.

### Assignment of Error Number 5

Factor (12) of Article 134 is the basis of Wade's fifth assignment of error. It reads:

> The responsibility for the care and rearing of the child previously exercised by each party.

Wade argues that Ramona's previous care and rearing of the children is not as solid as it seems and itemizes four instances which he contends support this proposition.

The instances itemized do not detract from the fact that for five years Ramona had the bulk of the responsibility for rearing the three children and did an excellent job under less than desirable conditions.

### *Assignment of Error Number 6*

Wade's last objection is to the trial court's conclusion that it is in the best interest of the children for them to remain together with Ramona. The current status of the law is that siblings being together outweighs the desire of one sibling to live with the other parent. *Howze v. Howze*, 99-852 (La. 5/26/99), 735 So.2d 619. While it is sometimes necessary to separate the children of a family, courts should avoid doing so. *Id.* "Normally, the welfare of children is best served by leaving them together, so they can have the full benefit of companionship and affection. When feasible, a court should shape its orders to maintain family solidarity." *Shaffer v. Shaffer*, 00-1251 (La.App. 1 Cir. 9/13/00), 808 So.2d 354, 358.

We find this especially true in this situation where M.W.W. and A.K.W. have special needs and where T.A.W., because of her age, may be relied on by M.W.W and A.K.W. more than in a situation where the siblings are closer in age.

### *Conclusion*

We have considered all of the facts herein in light of the trial court's conclusions and Wade's arguments. Our review reveals that, while the trial court did err with regard to one finding of fact, it did not abuse its discretion nor was it manifestly erroneous in its ultimate conclusion that Ramona should continue as the domiciliary parent of T.A.W., M.W.W. and A.K.W. The judgment of the trial court is affirmed. All costs are assessed to Wade Winzor.

**AFFIRMED.**