# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## CA 04-377

K. M. L. C., NOW K.M.N.

VERSUS

D. B. C.

**********

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 99-4065
HONORABLE LILYNN ANNETTE CUTRER, DISTRICT JUDGE

**********

**BILLY HOWARD EZELL**
**JUDGE**

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Billy Howard Ezell, and James T. Genovese, Judges.

**AFFIRMED.**

**Satrica Del-Antee Williams**
**Attorney at Law**
**3221 Common St.**
**Lake Charles, LA 70601**
**(337) 436-2075**
**Counsel for: Plaintiff/Appellant**
**K. M. L. C. now K.M. N.**

**Frank Granger**
**Attorney at Law**
**1135 Lakeshore Drive**
**Lake Charles, LA 70601**
**Attorney for the Defendant/Appellee**
**D.B.C.**

**D. B. C.**
**844 W. Dave Dugas Road**
**Sulphur, LA 70665**

**EZELL, JUDGE**.

The mother, K.C., now K.N., appeals a trial court judgment designating the father, D.C., as the domiciliary parent. For the following reasons, we affirm.

## FACTS

The parties were married on July 22, 1995. One child, a son, was born on November 14, 1996. The parties separated on June 24, 1998, and on June 16, 1999, the mother filed a petition for divorce. The child, K.C., was one-and-a-half years old when his parents separated. A judgment of divorce was signed on September 30, 1999.

Around June of 1999, the mother moved to Paris, Texas, where her parents had also recently moved. In Paris, the mother got a job. While working in Paris, the mother met her current husband, E.N. In October 2000, E.N. moved to Orlando for work purposes. The mother followed, where she and her son lived with E.N. The group moved once again in June 2001 to Phoenix, Arizona. E.N.'s job required him to move again, and this time the group moved to Las Cruces, New Mexico, in February 2002. E.N. and K.N. married while in New Mexico.

During this time, D.C.'s contact with K.C. was sparse. D.C.'s dad and stepmother would go get K.C. for visits, and D.C. would visit with K.C. at this time. However, as K.C. got older, D.C. began to contact and visit with him on a regular basis.

A joint written stipulation of custody and child support was filed at the clerk of court's office on September 30, 1999. However, this stipulation was not signed by the parties or a judge.

On April 11, 2002, the father filed a rule for contempt and modification of custody asking that he be designated as the domiciliary parent. In the interim, the

September 30, 1999 agreement was approved and signed by the trial court on November 12, 2002. This agreement designated the parties as joint custodians naming the mother as domiciliary parent.

The father then filed another rule on January 22, 2003, for contempt and change of domiciliary status and an objection to yet another proposed relocation, this time to Aruba. In response, the mother filed a rule for past-due child support, contempt, attorney fees, income assignment, and suspension of licenses. She claimed that the father had missed payment of several months of child support and had not paid his share of medical expenses not covered by insurance.

Trial on these matters was held on March 28, May 6, May 7, and May 8, 2003. The trial court found that the father had proven that there was a material change of circumstances which affected the son's welfare. After reviewing the factors in La.Civ.Code art. 134, the trial court granted joint custody to the parents, but named the father as the domiciliary parent. The trial court also found the mother in contempt of court for failure to allow the father visitation with his son on various occasions, but suspended the sentence as long as she complies with all future orders of the court. The trial court further found that the father was liable for past-due child support in the amount of $4,877. The court also found the father in contempt, but suspended any sentence as long as he too complies with all future orders of the court. The court also held the father responsible for $500.83 as his portion of his son's medical bills.

The mother appealed the judgment to this court. She has asserted four assignments of error, which all relate to the trial court's decision to name the father as the domiciliary parent.

DISCUSSION

The mother recognizes that there was never a considered decree establishing a custodial relationship. Therefore, the father was seeking to modify a consent custody decree and was "required to establish that a material change of circumstances has occurred since the original decree and that the proposed custody arrangement is in the best interest of the minor child." *Hillman v. Davis*, 02-685, p.6 (La.App. 3 Cir. 12/11/02), 834 So.2d 594, 598. Furthermore, a trial court's determination in child custody matters is entitled to great weight and discretion and will not be disturbed on review in the absence of a clear showing of abuse. *AEB v. JBE*, 99-2668 (La. 11/30/99), 752 So.2d 756.

The trial court issued extensive, written reasons for judgment. In finding a material change in circumstances the trial court noted:

> This move [to Aruba] will be [the mother's] fifth move with [the child] in the last three years. The Court should be able to consider a party's intent to relocate if it is a significant move such as out of the country or if the move constitutes one of many moves experienced by the child. The Court finds that the circumstances in this case, a notice to relocate for the fifth time along with testimony indicating a clear intent to move, constitute a material change affecting [the child's] welfare.

> The testimony and evidence revealed other material changes affecting the welfare of [the child], besides the proposed relocation of [the mother and child]. Witnesses clearly established a pattern by [the mother] of failing to facilitate [the child's] relationship with [the father]. [The mother] inappropriately restricted [the father's] ability to see [the child] on the evening of the same date that the parties stipulated to custody and access in court (November 12, 2002). In addition, [the father] was entitled to one week of visitation for the 2002 Thanksgiving holidays, which was cut short due to [the child's] school schedule. The week following Thanksgiving, [the mother] kept [the child] out of school and left him with her parents in Texas while she and her husband traveled to Georgia. [The mother] did not offer [the father] the opportunity to keep [the child] or exercise any extra visitation during this week. [The mother] also refused visitation with [the child] during lunch when she was in town for the court-ordered evaluations with Katherine Long. These instances of [the mother's] refusal to promote the relationship between [the child] and [the father] occurred since the

last stipulated judgment.

We recognize that potential relocation shall not be considered a change in circumstances as mandated by La.R.S. 9:355.11, and that it is only an actual move that may be considered a change in circumstances. *See Masters v. Masters*, 33,438 (La.App. 2 Cir. 4/5/00), 756 So.2d 1196, *writ denied*, 01-3096 (La. 12/7/01), 803 So.2d 975. *See also Hensgens v. Hensgens*, 94-1200 (La.App. 3 Cir. 3/15/95), 653 So.2d 48, *writ denied*, 95-1488 (La. 9/22/95), 660 So.2d 478.

It is obvious that the trial court recognized this was the law when it indicated it "**should be able to consider** a party's intent to relocate if it is a significant move such as out of the country or if the move constitutes one of many moves experienced by the child." (emphasis supplied). The trial court then went on to find that there was a material change of circumstances for reasons other than the intent to relocate to Aruba. Reviewing the evidence and testimony in the record, we cannot say that the trial court abused its discretion.

The child has been forced to move many times during his young life. Since the divorce, the child has been moved to four different states within three years. The mother claims that the child loves the adventure of moving and making new friends, but we agree with the trial court that numerous moves in a short period of time is detrimental to a child's well-being. As explained by Katherine Long, a professional counselor who interviewed the parents and child, moving regularly means the child has to keep recovering the same ground in each new place. She testified that children learn not to emotionally invest.

While we recognize that the father may not have had much contact with the child immediately after the divorce, he did try as the child got older. The father explained that he was depressed following the separation and divorce. His family

4

confirmed that he went into depression and withdrawal following the divorce. However, the father made substantial efforts in the last years. We agree that these efforts were often thwarted by the mother.

We do not find that the trial court abused its discretion in determining that a material change in circumstances had occurred in the child's life. While the record shows that the mother has always been a nurturing and loving mother, the testimony was clear that the child faced many moves, and the relationship and contact with his father has been affected.

In determining the custody and access arrangement, the trial court considered the factors in La.Civ.Code art. 134 to reach a decision about what was best for the child. The trial court issued extensive reasons pertaining to each Article 134 factor and concluded:

> This decision is not an easy one as both parents bring positive attributes to the care of [the child]. However, the Court finds that [the father] will provide [the child] with a stable home, school and community which will meet [the child's] needs. The Court also finds that [the father] will promote [the child's] educational growth, in addition to facilitating and promoting his relationship with his mother. These are opportunities which have been provided to [the mother], but which she failed to seize upon.

After reviewing the testimony and record, we are convinced that the trial court correctly determined that it is in the best interest of the child that his father be designated as the domiciliary parent. It is apparent that one of the trial court's main concerns was the fact that the child has not been able to live in a stable environment for any length of time. The numerous moves have facilitated his placement in different schools forcing him to form new friendships and bonds. The father admitted that communication between he and his ex-wife had become strained, and it was the trial court's concern that the mother was doing nothing to facilitate a relationship between the child and his father. Phone calls often went unreturned. A move out of

5

the country would certainly create more difficulty for the child in all these areas. The father has always lived in the same area and can offer stability to the child. There is also extended family in the area to help nurture the child's growth.

The child also has a speech problem that requires therapy. Although the mother felt comfortable with the school situation in Aruba, the trial court was concerned that resources may not be available that would aid the child. Katherine Long also spoke to one of the child's teachers. The teacher found him to be shy and introverted at first, and that it was difficult to get information out of him. Once again, an indication that the child needs stability.

The father indicated that he would be willing to work with the mother on the visitation schedule and even wants to insure that the stepfather is included in the child's life because he recognizes that the stepfather is also an important person to the child. We agree with the trial court's decision that the father is the best person to serve as domiciliary parent.

For the reasons set forth in this opinion, we affirm the judgment of the trial court maintaining joint custody of the minor child between the parties and designating the father as the domiciliary parent. All costs of this appeal are assessed to the mother, K.M.N.

**AFFIRMED**.